**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MURRAY METALLURGICAL COAL | ) | Case No. 20-10390 (JEH) |
| HOLDINGS, LLC, *et al.*,[1] | ) | |
| | ) | Judge John E. Hoffman, Jr. |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' APPLICATION FOR ENTRY**
**OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF**
**PROSKAUER ROSE LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS**
**IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this application for the entry of an order, substantially in the form attached hereto as **Exhibit A**,

authorizing the Debtors to retain and employ Proskauer Rose LLP ("Proskauer") as their attorneys

effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this application, the

Debtors submit the declaration of Timothy Q. Karcher, a partner of Proskauer (the "Karcher

Declaration"), which is attached hereto as **Exhibit B** and the declaration of Michael McKown, the

General Counsel and Senior Vice President of Murray Energy Corporation  (the "McKown

Declaration"), which is attached hereto as **Exhibit C**. In further support of this application, the

Debtors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification
number, if applicable, are: Murray Metallurgical Coal Holdings, LLC (4633); Murray Eagle Mining, LLC (4268);
Murray Alabama Minerals, LLC (4047); Murray Alabama Coal, LLC (3838); Murray Maple Eagle Coal, LLC
(4435); and Murray Oak Grove Coal, LLC (4878).  The Debtors' primary business address is 46226 National Road,
St. Clairsville, OH 43950.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the Southern District of Ohio (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and *General Order 30-2*

from the United States Bankruptcy Court for the Southern District of Ohio, dated December 4,

2019 (the "General Order").   The Debtors confirm their consent, pursuant to Rule 7008 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by

the Court in connection with this application to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 330 of title 11 of

the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules

2014(a) and 2016, Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern

District of Ohio (the "Local Rules"), and the General Order.

**Background**

4.      The Debtors are engaged in the mining and production of metallurgical coal.

Unlike thermal coal, which is primarily used by the electric utility industry to generate electricity,

metallurgical coal is used to produce coke, which is an integral component of steel production.

5.      The Debtors primarily own and operate two active coal mining complexes and other

assets in Alabama and West Virginia.  The larger of the two mining complexes, the Oak Grove

Mine ("Oak Grove"), is an underground longwall mine located in Alabama.  The other mining

complex, known as the Maple Eagle No. 1 Mine ("Maple Eagle" and together with Oak Grove,

the "Mining Complexes"), is an underground continuous mining and surface mining complex

located in West Virginia.[2]  To preserve liquidity, the Maple Eagle mine has been in a "hot idle"[3]

state since September.  The Oak Grove mine has been in a "hot idle" state since November.  The

Debtors have been engaged in a marketing process to sell Maple Eagle for several months.

6.      Each of the Debtors is an unrestricted subsidiary of Murray Energy Corporation

("Murray Energy"), which, along with Javelin Investment Holdings LLC ("Javelin"), acquired the

mines and other assets of the Debtors from Mission Coal Company, LLC ("Mission") in April

2019 (the "Met Acquisition").  At the time of the Met Acquisition, Mission was a debtor in its own

chapter 11 cases pending in the United States Bankruptcy Court for the Northern District of

Alabama.[4]

7.      In connection with the Met Acquisition, on April 29, 2019, Met Holdings entered

into a credit agreement (the "Take-Back Credit Agreement"), which governs, among other things,

a secured term credit facility (the "Take-Back Facility") among Met Holdings, as borrower, its

subsidiaries (the "Met Subs"), as guarantors, Wilmington Savings Fund Society, FSB, as

administrative agent, and any additional lenders from time to time party thereto.  The Take-Back

Facility matures on April 29, 2023, and is secured by substantially all of the Debtors' assets.

8.      In addition, on April 29, 2019, Met Holdings entered into a Management Services

Agreement (the "Management Services Agreement") with Murray Energy pursuant to which

Murray Energy manages, administers, and oversees all aspects of the operation of the Mining

Complexes, including without limitation, the day-to-day operation, maintenance, and business of

the Mining Complexes.

---

[2] The Debtors own a third mine, known as the North River Mine, in Alabama, which is not currently being operated.

[3] A mine that is in a "hot idle" state means that it is being temporarily idled and maintained in anticipation of
    returning to operation in the near future.

[4] The Mission bankruptcy cases are still pending.

Case 1:20-bk-10390   Doc 152   Filed 02/20/20   Entered 02/20/20 19:28:19   Desc Main
Document     Page 4 of 85

9.      Approximately six months after the Met Acquisition, on October 29, 2019, Murray Energy and its affiliated debtors and debtors in possession (the "MEC Debtors") filed voluntary chapter 11 petitions in the Bankruptcy Court for the Southern District of Ohio (the "MEC Chapter 11 Cases").  The MEC Chapter 11 Cases are being jointly administered under Case No. 19-56885. Significantly, none of the Debtors are debtors in the MEC Chapter 11 Cases.

10.     There are a number of differences between these chapter 11 cases and the MEC Chapter 11 Cases, which warrant keeping them separated from the MEC Chapter 11 Cases, including: (i) none of the Debtors are borrowers or guarantors on the debtor in possession financing obligations in the MEC Chapter 11 Cases; (ii) the Debtors are primarily engaged in mining, extraction, and processing of metallurgical coal, whereas the MEC Debtors are primarily engaged in the mining, extraction, and processing of thermal coal, and each of these commodities is subject to different market pressures; (iii) the lenders to the Debtors under the Take-Back Facility are different from the lenders to the MEC Debtors; and (iv) as a result of the Take-Back Facility and other claims against the assets of the Debtors (including obligations to Javelin Global Commodities (UK) LTD ("Javelin Global")), there was perceived to be little to no equity value in the Debtors that would flow up to the MEC Debtors, although there was a belief that the Debtors could survive as a going concern without the need for a chapter 11 filing.

11.     Commencing on February 11, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 14, 2020, the Bankruptcy Court entered an order directing the joint administration of these chapter 11 cases

pursuant to Bankruptcy Rule 1015(b).  The Debtors have filed a Notice of Election of Complex Chapter 11 Cases.

12.     The Debtors commenced these chapter 11 cases after extensive negotiations with their major stakeholders concerning a global resolution to the Debtors' financial difficulties.  In an effort to ensure that value is maximized for all stakeholders and that the Debtors' remediation obligations are honored at each of their Mining Complexes, these chapter 11 cases have been commenced with a three-pronged strategy that has the support of the Take-Back Facility lenders, Javelin, Javelin Global, and Murray Energy.  First, the Debtors intend to facilitate the consensual sale of substantially all of the assets of Maple Eagle pursuant to Bankruptcy Code section 363.  Second, the Debtors intend to effectuate a reorganization of their remaining operations, which is premised on the continued and future operation of the Oak Grove mining complex, through a sale of Oak Grove pursuant to a plan.  And third, the Debtors intend to ensure that they can continue to comply with their reclamation obligations at the North River mining complex.  These three elements have been memorialized in a Restructuring Support Agreement among Met Holdings, Murray Energy, the Take-Back Facility lenders, and Javelin Global, all as more fully set forth in the Moore Declaration.

13.     As of the Petition Date, the Debtors have approximately $270 million in debt and liabilities, including but not limited to approximately $169 million related to the Take-Back Facility, approximately $21.5 million under an emergency bridge financing facility,[5] approximately $23.5 million owed to Javelin Global under certain of the Javelin Agreements, and approximately $12.7 million in intercompany liabilities owed to Murray Energy and other affiliates.  In addition, the Debtors have approximately $43 million in outstanding trade payables.

---

[5] This facility is documented by amendments to the Take-Back Facility.

## Relief Requested

14.     By this application, the Debtors seek the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the retention and employment of Proskauer as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Proskauer effective as of December 11, 2019 (the Engagement Letter"), a copy of which is attached as **Exhibit 1** to **Exhibit A** hereto and incorporated herein by reference.

## Proskauer's Qualifications

15.     Proskauer is an international firm with more than 725 lawyers in multiple countries, including the United States, United Kingdom, China, France, and Brazil.  Within the United States, Proskauer has offices in New York, New York; Boca Raton, Florida; Boston, Massachusetts; Chicago, Illinois; Los Angeles, California; New Orleans, Louisiana; and Washington, D.C. Proskauer's attorneys provide a wide range of legal services, including corporate, litigation, regulatory, tax, and employment law.

16.     Proskauer's attorneys have extensive experience representing debtors, creditors' committees, equity committees, creditors, trustees, and others in a wide variety of bankruptcy cases.  Proskauer's attorneys currently represent, or have represented, debtors, creditors, and equity interest holders in multiple large and complex chapter 11 cases, and have been involved in some of the largest chapter 11 cases of the past decades, including Westinghouse Electric Energy Company, Pacific Exploration, Caesars Entertainment Operating Company, Energy Future Holdings, Enron Corporation, G-I Holdings, Lehman Brothers, Refco, Inc., Ambac, MF Global, Capmark, Texaco, NewPage Corporation, and Chrysler, as well as other complex restructurings, both in and out of court.

17.    The attorneys from Proskauer who will be employed in these chapter 11 cases are each members in good standing in the jurisdictions in which such attorneys are admitted (with the possible exception of 1st-year lawyers who are awaiting bar admission).

18.    In preparing for its representation of the Debtors in these chapter 11 cases, Proskauer has become familiar with these cases and the Debtors' businesses and many of the potential legal issues that may arise in the context of these chapter 11 cases.  Based on these facts, the Debtors believe that Proskauer is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to be Provided

19.    Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of Proskauer to render the following legal services:

    a.    advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

    b.    advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

    c.    attending meetings and negotiating with representatives of creditors and other parties in interest;

    d.    taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

    e.    preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

    f.    representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.        advising the Debtors in connection with any potential sale of assets;

h.        appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.        advising the Debtors regarding tax matters;

j.        taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.        performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

20.    The Debtors intend to retain Allen Stovall Neuman Fisher & Ashton LLP

("ASNF&A") as co-counsel to the Debtors.  The services to be provided by Proskauer on behalf

of the Debtors will be provided in coordination with ASNF&A to avoid duplication of services.

**Professional Compensation**

21.    Proskauer intends to apply for compensation for professional services rendered on

an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases,

subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures

and orders of the Court.  The hourly rates and corresponding rate structure Proskauer will use in

these chapter 11 cases are the same as the hourly rates and corresponding rate structure that

Proskauer uses in other restructuring matters, as well as similar complex corporate, securities, and

litigation matters whether in court or otherwise, regardless of whether a fee application is required.

These rates and the rate structure reflect that such restructuring and other complex matters typically

are national in scope and involve great complexity, high stakes, and severe time pressures.

8

22.    Proskauer operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

23.    The billing rates of the Proskauer attorneys principally expected to work on this matter range as follows:[6]

| Billing Category[7] | U.S. Range |
|---|---|
| Partners | $1,245-$1,595 |
| Of Counsel | $1,100 |
| Associates | $695-$1,075 |
| Paraprofessionals | $465-$540 |

24.    Proskauer's hourly rates are set at a level designed to compensate Proskauer fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[8]

---

[6] For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate. After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.  Proskauer does not currently anticipate the use of professionals or paraprofessionals residing outside of the United States.

[7] Although Proskauer does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Proskauer will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Proskauer will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.  While the rate ranges provided for in this Application may change if an individual leaves or joins Proskauer, or if any such individual's billing rate falls outside the ranges disclosed above, Proskauer does not intend to update the ranges for such circumstances.

[8] For example, like many of its peer law firms, Proskauer typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the proposed order attached hereto as **Exhibit A**, Proskauer will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file any such notice with the Court.

25.    The rate structure provided by Proskauer is appropriate and not significantly different from (a) the rates that Proskauer charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Proskauer will perform in these chapter 11 cases.

26.    The Debtors also understand that Proskauer is customarily reimbursed for all actual and necessary identifiable, non-overhead expenses incurred in connection with the representation of a client in a given matter.  It is also Proskauer's policy to charge its clients only the amount actually incurred by Proskauer in connection with such items.  Examples of such expenses include, but are not limited to, photocopying charges, travel expenses, filing fees, delivery charges, postage, long distance telephone charges, transcription charges, and computerized legal research charges. Proskauer will seek reimbursement for its actual and necessary costs and expenses incurred in connection with its representation of the Debtors, and will maintain detailed records of all such costs and expenses.

27.    To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time Proskauer utilizes the services of overtime secretaries.  Proskauer charges fees for these services pursuant to the Engagement Letter, which permits Proskauer to bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Proskauer professionals may charge their overtime meals and transportation to the Debtors consistent with prepetition practices.

28.    The Debtors respectfully submit that such rates and policies are reasonable and market-based.  In reaching this conclusion, the Debtors have taken into account several factors, including the rates of other law firms with Proskauer's reputation and expertise in other chapter 11 cases.

## Compensation Received by Proskauer from the Debtors

29.    Per the terms of the Engagement Letter, on December 13, 2019, the Debtors paid $100,000 to Proskauer, which, as stated in the Engagement Letter, constituted an initial retainer. Inclusive of that payment, as further set forth in the Karcher Declaration, the Debtors made additional advance retainer payments totaling $3.5 million in the aggregate, against which Proskauer has billed $3,499,546.13 prior to the Petition Date.  As of the Petition Date, no amounts were due and owing to Proskauer.  The Debtors respectfully submit that these amounts are reasonable under Rule 1.5 of the Ohio Rules of Professional Conduct.  Other than as set forth herein, Proskauer has not received any payments from the Debtors during the 12 months preceding the Petition Date.

30.    As stated in the Engagement Letter, any advance payment retainer is earned by Proskauer upon receipt, and the Debtors have no interest in any retainer upon Proskauer's receipt. Any retainer may be held in Proskauer's general cash account and will not be held in a client trust account.

31.    Pursuant to Bankruptcy Rule 2016(b), Proskauer has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Proskauer or (b) any compensation another person or party has received or may receive.

32.    As of the Petition Date, the Debtors did not owe Proskauer any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred but not yet applied to Proskauer's advance payment retainer, the amount of Proskauer's advance payment retainer always exceeded any amounts listed or to be listed on statements

describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

## Proskauer's Disinterestedness

33. To the best of the Debtors' knowledge and as disclosed herein and in the Karcher Declaration, (a) Proskauer is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Proskauer has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Karcher Declaration.

34. Proskauer will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Proskauer will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Supporting Authority

35. The Debtors seek retention of Proskauer as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

36. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm]
> to be employed, the reasons for the selection, the professional services to be
> rendered, any proposed arrangement for compensation, and, to the best of the
> applicant's knowledge, all of the [firm's] connections with the debtor, creditors,
> any other party in interest, their respective attorneys and accountants, the United
> States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

37.    The Debtors submit that for all the reasons stated above and in the Karcher Declaration, the retention and employment of Proskauer as counsel to the Debtors is warranted. Further, as stated in the Karcher Declaration, Proskauer is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Karcher Declaration.

## Notice

38.    The Debtors have provided notice of this motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the Southern District of Ohio; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Take-Back Facility; (d) Javelin Investment Holdings LLC; (e) counsel to the Ad Hoc Group of Prepetition Term Loan Lenders; (f) the administrative agent under the Debtors' proposed debtor-in-possession financing facility; (g) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors operate; (h) the offices of the attorneys general for the states in which the Debtors operate; (i) the United States Attorney's Office for the Southern District of Ohio; (j) the Internal Revenue Service; (k) the Pension Benefit Guaranty Corporation; (l) the United Mine Workers of America; (m) counsel to each of the lenders

of the Debtors' proposed debtor-in-possession financing facility; (n) Murray Energy; (o) Javelin

Global; (p) all taxing authorities; (q) all mechanic's lien claimants; (r) all lessors; and (s) any party

that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of

the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

39.     No prior request for the relief sought in this motion has been made to this or any

other court.

WHEREFORE the Debtors respectfully request that the Court enter an order granting the

relief requested herein and such other and further relief as the Court deems just and proper.


Dated:   February 20, 2020                         */s/ Robert D. Moore*
Columbus, Ohio                                     Robert D. Moore
                                                   Vice President
                                                   Murray Metallurgical Coal Holdings, LLC

**<u>Exhibit A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MURRAY METALLURGICAL COAL | ) | Case No. 20-10390 (JEH) |
| HOLDINGS, LLC, *et al.*,[1] | ) |  |
|  | ) | Judge John E. Hoffman, Jr. |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PROSKAUER ROSE LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to employ and retain Proskauer Rose LLP ("Proskauer") as their attorneys effective *nunc pro tunc* to the Petition Date on the terms set forth in the engagement letter (the "Engagement Letter") attached hereto as **Exhibit 1**, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of Ohio (the "Local Rules"), and *General Order 30-3* from the United States Bankruptcy Court for the Southern District of Ohio, dated December 4, 2019; and the Court having reviewed the Application, the Declaration of Timothy Q. Karcher, a partner of Proskauer

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Murray Metallurgical Coal Holdings, LLC (4633); Murray Eagle Mining, LLC (4268); Murray Alabama Minerals, LLC (4047); Murray Alabama Coal, LLC (3838); Murray Maple Eagle Coal, LLC (4435); and Murray Oak Grove Coal, LLC (4878). The Debtors' primary business address is 46226 National Road, St. Clairsville, OH 43950.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

1

(the "Karcher Declaration"), and the declaration of Michael McKown, the General Counsel and

Senior Vice President of Murray Energy Corporation (the "McKown Declaration); and the Court

having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334; and the Court having found this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and

this Court may enter a final order consistent with Article III of the United States Constitution; and

the Court having found that venue of this proceeding and the Application in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations

made in the Application and in the Karcher Declaration that (a) Proskauer does not hold or

represent an interest adverse to the Debtors' estates and (b) Proskauer is a "disinterested person"

as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the

Bankruptcy Code; and the Court having found that the relief requested in the Application is in the

best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court

having found that the Debtors provided adequate and appropriate notice of the Application under

the circumstances and that no other or further notice is required; and the Court having reviewed

the Application and having heard statements in support of the Application at a hearing held before

the Court (the "Hearing"); and the Court having determined that the legal and factual bases set

forth in the Application and at the Hearing establish just cause for the relief granted herein; and

any objections to the relief requested herein having been withdrawn or overruled on the merits;

and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED

THAT:

1.      The Application is granted to the extent set forth herein.

2.      The Debtors are authorized to retain and employ Proskauer as their attorneys *nunc pro tunc* to the Petition Date in accordance with the terms and conditions set forth in the

Application and in the Engagement Letter attached hereto as **Exhibit 1**.

3.      Proskauer is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter.  Specifically, but without limitation, Proskauer will render the following legal services:

      a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

      b.      advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

      c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

      d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

      e.      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

      f.      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

      g.      advising the Debtors in connection with any potential sale of assets;

      h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

      i.      advising the Debtors regarding tax matters;

      j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

      k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

4.      Proskauer shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  Proskauer also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Revised UST Guidelines"), both in connection with the Application and the interim and final fee applications to be filed by Proskauer in these chapter 11 cases.

5.      Notwithstanding anything in the Engagement Letter to the contrary, Proskauer shall apply any remaining amounts of its prepetition advance payment retainers as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Proskauer.  Proskauer is authorized without further order of the Court to reserve and apply amounts from the prepetition advance payment retainers that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Proskauer for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection  to

4

Proskauer's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

7.     The U.S. Trustee reserves the right to object to the appropriateness of any fees and expenses incurred notwithstanding Proskauer's disclosure in the Application, the Karcher Declaration, and the Engagement Letter of its intention to incur costs.

8.     Proskauer shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Proskauer to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

9.     Proskauer shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

10.     The Debtors and Proskauer are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

11.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

12.     The Debtors shall serve this Order in accordance with all applicable rules and shall file a certificate of service evidencing compliance with this requirement.

13.     To the extent the Application, the Karcher Declaration, the McKown Declaration,

or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

14.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

SO ORDERED

## <u>Exhibit 1</u>

**Engagement Letter**

Proskauer 〉  Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

David M. Hillman
Member of the Firm
d 212.969.3470
f 212.969.2900
DHillman@proskauer.com
www.proskauer.com

December 11, 2019

**BY EMAIL**

Murray Metallurgical Coal Holdings LLC
Murray Eagle Mining LLC
Murray Alabama Minerals, LLC
Murray Maple Eagle Coal, LLC
Murray Alabama Coal, LLC
Murray Oak Grove Coal, LLC

Re: Engagement Letter

To the Above Named Parties:

We have been asked to represent and advise Murray Metallurgical Coal Holdings LLC, Murray Eagle Mining LLC, Murray Alabama Minerals, LLC, Murray Maple Eagle Coal, LLC, Murray Alabama Coal, LLC, Murray Oak Grove Coal, LLC, (collectively, "Murray Metallurgical" or "you") to assess strategic alternatives together with any other matter that you and we may specifically agree in writing to be subject to such representation (the foregoing matters are collectively referred to in this letter agreement as the "Project"). We are writing to confirm the terms of our engagement regarding such representation. Except as specifically agreed, our representation does not include the representation of any of your other affiliates, nor do we undertake any obligations with respect to any matter not specifically defined as part of the Project.

**Fees, Disbursements and Charges**

Unless you and we otherwise agree in writing, our fees will be billed on a weekly basis. Our statements will set forth the amount of our fees and any associated disbursements and charges, and the basis for their calculation.

Our normal billing practice is to determine fees by multiplying the number of hours spent working on a matter by our billing rates for similar services performed by the firm. The minimum billing increment is ordinarily 1/4 hour. Although I will be the attorney primarily responsible for the Project, I likely will enlist the services of other attorneys and personnel employed by or associated with the firm, whose services will be billed at their respective applicable rates. My current billing rate is $1,495.00 per hour. The rates of our other attorneys

10063/99987-512 CURRENT/112936921v3

**Proskauer》》**

December 11, 2019
Page 2

and personnel vary, but are comparable to or lower than mine.  The firm increases its standard billing rates from time to time.  All statements are due and payable upon receipt, but in any event no later than 30 days after the date of the statement.  You agree to review our bills promptly when received and promptly advise us of any questions or concerns you may have.  Our fees will be due regardless of whether the Project is concluded.

Charges and disbursements will also be billed to you on a weekly basis after they are incurred and recorded by our accounting department.  I have attached a schedule listing the bases on which we will bill you for certain charges and disbursements.  From time to time in the course of this engagement, it may become necessary to incur large expenses on your behalf, for example, for consultants, local or associated counsel, experts, filing fees, printing and outside reproduction, deposition or trial transcripts, and graphics and trial exhibits.  To assure that these services are obtained expeditiously and to avoid the necessity of advancing large amounts on your account, we will arrange for payment of vendors for such expenses by one of the following methods, after consulting with you:  (1) direct billing to you by the vendor for the services rendered by the vendor; (2) payment by us of invoices for services rendered on your behalf, with a request for prompt reimbursement upon presentation to you of a paid invoice; or (3) the establishment of a deposit with us, in advance, to provide funds to pay anticipated expenses of those types.

We may from time to time, either at your request or at our own initiative, provide you with an estimate of fees or costs that we reasonably anticipate will be incurred in connection with the Project.  It is understood that such estimates, which are predicated on a variety of assumptions, are subject to unforeseen circumstances and are by their nature inexact.  No written or oral estimate, either before, at the time of, or following the execution of this engagement letter, shall be construed to be a fee cap or fixed fee.

**Retainer**

In connection with our services, we have enclosed an invoice for an initial retainer of $ $100,000.00 (the "Retainer"), which Murray Metallurgical agrees to replenish on a periodic basis to the extent necessary to ensure that the Retainer will at all times be not less than $100,000.00. The Retainer as earned by the Firm upon receipt, may be held in the Firm's general cash account, will not be held in a separate account on your behalf, and Murray Metallurgical will not have an interest in the Retainer. The Retainer is intended to be a prepayment, in which we have a security interest, for services actually rendered by us. We reserve the right to ask for an increase in the size of the initial retainer during the course of our engagement. We will refund any unapplied amount of the Retainer upon completion of the Project.

**Conflicts of Interest**

You acknowledge that we are a large general service firm representing numerous clients, nationally and internationally, over a wide variety of industries and businesses and in a wide variety of matters.  In light of the foregoing, the possibility exists that the interests of some of our

2

**Proskauer》》**

December 11, 2019
Page 3

other clients, current or prospective, may diverge from or become adverse to your interests. We want to be fair to you as well as to our other clients. Thus, we do not want our work on the Project to foreclose us from representing or advising other clients in matters that are adverse to your interests but are not directly related to the Project, including in litigation or other adversarial proceedings, and do not require the disclosure of your confidential information. After having considered this possibility, you have concluded that the benefits of our representation in the Project outweigh any disadvantages or risks of waiving future conflicts, and you agree to, and do, waive any conflict of interest that may be deemed to arise as the result of any such other representation and agree not to seek to disqualify or otherwise prevent our firm from representing other clients in such matters by reason of our work on, or representation of you in connection with, the Project, or based on our possession of your confidential information. In the event we become involved in an adverse representation, as permitted by this letter or otherwise with your consent, you hereby waive any claim that, in connection with the Project, we will have gained access to information of a kind or nature that would preclude such representation.

Your acceptance of the foregoing conditions of our agreement to represent you in connection with the Project has been made with full and complete awareness of the fact that we and present and future clients of our firm are and will be relying upon our ability to act for them in accordance with the terms of this letter. You hereby acknowledge that in accepting these conditions and executing this letter, you have not relied on any advice provided by this firm and are able to seek independent legal advice.

**<u>Terminating Representation</u>**

You have the right to discharge us as counsel at any time prior to the conclusion of the Project, but such discharge shall not affect our right to be paid all of our previously incurred but unpaid fees, and all of our previously incurred but unpaid charges and disbursements, in accordance with this letter agreement. You also agree that we have the right, if in our sole judgment we believe such action to be consistent with our professional obligations, to resign as your counsel, and that such resignation shall not affect our right to be paid all our previously incurred but unpaid fees, and all our previously incurred but unpaid charges and disbursements, in accordance with this letter agreement. Without limiting in any way our general legal and ethical rights to withdraw from representing you, it is agreed that we may withdraw if any of our invoices for legal fees, disbursements and/or charges incurred in connection with our representation of you remain outstanding for a period of 45 days. Subject to the provisions of this letter agreement, you agree not to raise any objection to any such resignation or to our continued representation of our other clients. If we elect, consistent with our ethical obligations, to resign as counsel, you agree to cooperate and facilitate such resignation by retaining substitute counsel or otherwise.

**<u>Conclusion of Representation and Disposition of Records</u>**

Once our work on the Project is completed, our representation of you will be concluded. At that point, or upon your earlier discharge of us or our earlier resignation as counsel, we may

Proskauer»

December 11, 2019
Page 4

inquire whether you would prefer that we send you our client files, destroy the client files, or place them in storage at your expense. Should you fail to state a preference, we will send you the files. In the event that you decline delivery of the files, we would have the option of destroying them or storing them at your expense. Notwithstanding the foregoing, and unless you instruct us otherwise, we will return and/or preserve any original documents we know or believe you will need to retain to enforce your rights or to bring or defend claims.

Periodically, we distribute materials that include listings of representative clients and, following completion of a Project, we may refer in those materials to our representation of you in connection with the Project, and you agree that we may do so. These references will not, of course, disclose any of your confidential information.

While we may contact you from time to time thereafter with information concerning legal developments that may relate to the Project, we cannot and do not undertake any responsibility to monitor or advise you with respect to any such developments, including any changes in law.

**Arbitration Provisions**

You and we agree that any dispute that may arise regarding the provision of legal services by the firm to you, including, without limitation, claims of malpractice or breach of fiduciary duty, or for nonpayment of fees, charges, or disbursements, shall be referred to and finally resolved by binding arbitration in New York, New York, [or location of relevant office] administered by the American Arbitration Association in accordance with its rules and procedures by a neutral arbitrator appointed in accordance therewith. The prevailing party will be entitled to all reasonable attorneys' fees and costs incurred in such arbitration. Judgment thereon can be entered in any court of competent jurisdiction. In the event that a dispute arises between us relating to our fees, you may also have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts of New York State, a copy of which will be provided to you upon request.

**Choice of Law**

This agreement shall be governed by and interpreted in accordance with the laws of the State of New York, without regard to such state's conflicts of laws principles.

**Conclusion**

If you have any questions about anything in this letter or need more information about any aspect of our engagement, please call me at any time. If you agree that the foregoing accurately reflects our understanding, please sign and return the enclosed copy of this letter. We appreciate your entrusting us with this matter and look forward to working with you.

Proskauer»

December 11, 2019
Page 5

Very truly yours,

David M. Hillman

Agreed to and Accepted on this
_____ day of December, 2019

By: _____
Name: Robert D. Moore
Title: Vice President
Murray Metallurgical Coal Holdings, LLC

By: _____
Name: Robert D. Moore
Title: Vice President
Murray Eagle Mining, LLC

By: _____
Name: Paul B. Piccolini
Title: President
Murray Alabama Coal, LLC

By: _____
Name: Robert D. Moore
Title: Vice President
Murray Maple Eagle Coal, LLC

By: _____
Name: Robert D. Moore
Title: Vice President
Murray Alabama Minerals, LLC

By: _____
Name: Paul B. Piccolini
Title: Vice President
Murray Oak Grove Coal, LLC

### PROSKAUER ROSE LLP

### SCHEDULE OF CHARGES AND DISBURSEMENTS

Effective January 1, 2019

Attached is a list of disbursements regularly made by Proskauer lawyers on behalf of clients and charges for services which our firm may provide in the course of a legal matter. Included is an explanation of the basis on which clients are billed for a disbursement or charge.

This schedule is subject to change from time to time.

If you have any questions, please feel free to direct them to Leigh Anne Whyte, Chief Financial Officer (212.969.5150), or to discuss them with the lawyer at our firm with whom you deal concerning billing issues.

### **DISBURSEMENTS**

The actual amount to be paid by Proskauer to a third party vendor for the following services will be billed to the client

Client hand deliveries by outside vendors

Copying and document retrieval fees charged by government agencies or service companies

Expert Witness Fees

Fees of registered agents and corporate service companies

Filing Fees of Courts and Administrative Agencies

Food service during conferences and other meetings on behalf of a client

Messenger Service

Outside Consultants, including accountants, other law firms, investigators and translators

Postage

Printing or Outside Reproduction charges including document binding

Transcripts, Court Reporters

Travel on client business, including transportation, lodging and meals provided by third parties

Velobinding

## CHARGES

The charges described below do not necessarily reflect the precise amount we pay to outside vendors, but are intended to compensate our firm for all aspects of the service provided. Thus, these charges may include as allocation of overhead expenses or other expenses we incur that are directly associated with the provision of the service in question.

| Type | How Client Is Billed |
| --- | --- |
| Automobile travel on client business | 58 cents per mile |
| Computer aided research (Lexis, Westlaw, Nexis, etc.) | Standard rates set by vendor |
| eDiscovery Hosting Services | $15 per gigabyte per month |
| Fax - incoming only | No charge |
| Fax - outgoing only | $1.00 per page |
| Overnight deliveries (UPS, etc.) | Provider standard rate tariff |
| Proofreading services | $55/hour |
| Reproduction – black & white | $.15 per page |
| Reproduction – color | $.30 per page |
| Secretarial overtime | $65/hour |
| Telephone - local | No charge |
| Telephone - long distance | Equal to or less than the AT&T Measured Telecommunications Services Tariff |
| Word Processing services | $65/hour |

**<u>Exhibit B</u>**

**Karcher Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MURRAY METALLURGICAL COAL | ) | Case No. 20-10390 (JEH) |
| HOLDINGS, LLC, *et al.*,[1] | ) |  |
|  | ) | Judge John E. Hoffman, Jr. |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF TIMOTHY Q. KARCHER
IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF
AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
PROSKAUER ROSE LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN
POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, Timothy Q. Karcher, being duly sworn, state the following under penalty of perjury:

1.      I am a member of the law firm of Proskauer Rose LLP ("Proskauer"), located at

Eleven Times Square, New York, New York 10036.  I am an attorney from Proskauer working on

behalf of the above-captioned debtors and debtors in possession (collectively, the "Debtors").  I

am a member in good standing of the Bars of the State of New York and the State of New Jersey.

I am admitted to practice in the United States District Court for the Southern District of New York,

United States District Court for the Eastern District of New York, and the United States District

Court for the District of New Jersey.

2.      I submit this declaration in support of the Debtors' *Application for Entry of an*

*Order Authorizing the Retention and Employment of Proskauer Rose LLP as Attorneys for the*

---

[1]  The Debtors in these Chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification
number, if applicable, are: Murray Metallurgical Coal Holdings, LLC (4633); Murray Eagle Mining, LLC (4268);
Murray Alabama Minerals, LLC (4047); Murray Alabama Coal, LLC (3838); Murray Maple Eagle Coal, LLC
(4435); and Murray Oak Grove Coal, LLC (4878).  The Debtors' primary business address is 46226 National Road,
St. Clairsville, OH 43950.

1

*Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* (the "Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## Proskauer's Qualifications

3.    The Debtors seek to retain Proskauer because of Proskauer's recognized expertise and extensive knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

4.    Proskauer is an international firm with more than 725 lawyers in multiple countries, including the United States, United Kingdom, China, France, and Brazil.  Within the United States, Proskauer has offices in New York, New York; Boca Raton, Florida; Boston, Massachusetts; Chicago, Illinois; Los Angeles, California; New Orleans, Louisiana; and Washington, D.C. Proskauer's attorneys provide a wide range of legal services, including corporate, litigation, regulatory, tax, and employment law.

5.    Proskauer's attorneys have extensive experience representing debtors, creditors' committees, equity committees, creditors, trustees, and others in a wide variety of bankruptcy cases.  Proskauer's attorneys currently represent, or have represented, debtors, creditors, and equity interest holders in multiple large and complex chapter 11 cases, and have been involved in some of the largest chapter 11 cases of the past decades, including Westinghouse Electric Energy Company, Pacific Exploration, Caesars Entertainment Operating Company, Energy Future Holdings, Enron Corporation, G-I Holdings, Lehman Brothers, Refco, Inc., Ambac, MF Global, Capmark, Texaco, NewPage Corporation, and Chrysler, as well as other complex restructurings, both in and out of court.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

6.      The attorneys from Proskauer who will be employed in these chapter 11 cases are each members in good standing in the jurisdictions in which such attorneys are admitted (with the possible exception of first-year lawyers who are awaiting bar admission).

7.      In preparing for its representation of the Debtors in these chapter 11 cases, Proskauer has become familiar with these cases and the Debtors' businesses and many of the potential legal issues that may arise in the context of these chapter 11 cases.  Based on these facts, the Debtors believe that Proskauer is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## **Services to be Provided**

8.      Subject to further order of the Court, and consistent with the Engagement Letter, a copy of which is attached as **Exhibit 1** to **Exhibit A** to the Application, the Debtors seek the retention and employment of Proskauer to render, without limitation, the following legal services:

    a.    advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

    b.    advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

    c.    attending meetings and negotiating with representatives of creditors and other parties in interest;

    d.    taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

    e.    preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

    f.    representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.      advising the Debtors in connection with any potential sale of assets;

h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advising the Debtors regarding tax matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

9.      I understand the Debtors intend to retain Allen Stovall Neuman Fisher & Ashton LLP ("ASNF&A") as co-counsel to the Debtors.  The services to be provided by Proskauer on behalf of the Debtors will be provided in coordination with ASNF&A to avoid duplication of services.

### Professional Compensation

10.      Pursuant to section 330(a)(1)(A) of the Bankruptcy Code, the Court may award a professional person employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services . . . and reimbursement for actual, necessary expenses."

11.      Proskauer intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  I understand the hourly rates and corresponding rate structure Proskauer will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure

4

that Proskauer uses in other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

12.     Proskauer operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

13.     I understand the billing rates of the Proskauer attorneys principally expected to work on this matter range as follows:[3]

| Billing Category[4] | U.S. Range |
|---|---|
| Partners | $1,245-$1,595 |
| Of Counsel | $1,100 |
| Associates | $695-$1,075 |
| Paraprofessionals | $465-$540 |

14.     Proskauer's hourly rates are set at a level designed to compensate Proskauer fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly

---

[3] For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate. After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein.

[4] Although Proskauer does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Proskauer will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Proskauer will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.  While the rate ranges provided for in this Application may change if an individual leaves or joins Proskauer, or if any such individual's billing rate falls outside the ranges disclosed above, Proskauer does not intend to update the ranges for such circumstances.

rates vary with the experience and seniority of the individuals assigned.  These hourly rates are

subject to periodic adjustments to reflect economic and other conditions.[5]

15.     Proskauer represented the Debtors during the 12-month period before the Petition

Date.  The hourly rates listed above were effective from January 1, 2020 through the Petition Date.

I understand Proskauer's hourly rates from December 11, 2019 through December 31, 2019 for

services rendered ranged as follows:

| Billing Category | U.S. Range |
|---|---|
| Partners | $1,245-$1,595 |
| Of Counsel | $1,100 |
| Associates | $695-$1,075 |
| Paraprofessionals | $465-$540 |

16.     I understand the rate structure provided by Proskauer is appropriate and not

significantly different from (a) the rates that Proskauer charges for other similar types of

representations or (b) the rates that other comparable counsel would charge to do work

substantially similar to the work Proskauer will perform in these chapter 11 cases.

17.     Proskauer is customarily reimbursed for all actual and necessary identifiable, non-

overhead expenses incurred in connection with the representation of a client in a given matter.  It

is also Proskauer's policy to charge its clients only the amount actually incurred by Proskauer in

connection with such items.   Examples of such expenses include, but are not limited to,

photocopying charges, travel expenses, filing fees, delivery charges, postage, long distance

---

[5] For example, like many of its peer law firms, Proskauer typically increases the hourly billing rate of attorneys and
paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the
basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's
current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines
for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by
Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the proposed order attached
hereto as **Exhibit A**, Proskauer will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any
official committee before implementing any periodic increases, and shall file any such notice with the Court.

telephone charges, transcription charges, and computerized legal research charges. I understand Proskauer will seek reimbursement for its actual and necessary costs and expenses incurred in connection with its representation of the Debtors, and will maintain detailed records of all such costs and expenses.

18.     To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time Proskauer may utilize the services of overtime secretaries. Proskauer charges fees for these services pursuant to the Engagement Letter, which I understand permits Proskauer to bill the Debtors for overtime secretarial charges that arise out of business necessity. In addition, I understand Proskauer professionals may charge their overtime meals and transportation to the Debtors consistent with prepetition practices.

**Compensation Received by Proskauer from the Debtors**

19.     Per the terms of the Engagement Letter, on December 13, 2019, the Debtors paid $100,000 to Proskauer, which, as stated in the Engagement Letter, constituted an initial retainer. Thereafter, throughout the month of December, Proskauer received additional retainer amounts from the Debtors. Proskauer typically sends invoices on a monthly basis. On December 31, 2019, Proskauer was holding a total of $1.3 million in its retainer, which it applied to an invoice for the month of December in the amount of $1,070,914.15, leaving a retainer balance of approximately $229,000. Throughout the month of January, Proskauer received additional retainer amounts from the Debtors. On January 28, 2020, Proskauer was holding a total of $1,729,085.85 in its retainer. On February 4, 2020, Proskauer applied the retainer to an invoice for the month of January, in the amount of $1,490,563.73, leaving a retainer balance of approximately $238,000. In February, Proskauer received additional retainer amounts from the Debtors totaling $700,000. Immediately

7

prior to filing the petitions, Proskauer applied an invoice for $ 938,068.25 against its retainer, leaving an unapplied retainer balance of $453.87.

20.     In total, the Debtors paid Proskauer advance retainer payments totaling $3.5 million in the aggregate, against approximately $3.495 in invoices.  I understand these amounts are reasonable under Rule 1.5 of the Ohio Rules of Professional Conduct.  Other than as set forth herein, Proskauer has not received any payments from the Debtors during the 12 months preceding the Petition Date.

21.     As stated in the Engagement Letter, any advance payment retainer is earned by Proskauer upon receipt, and the Debtors have no interest in any retainer upon Proskauer's receipt. I understand any retainer may be held in Proskauer's general cash account and will not be held in a client trust account.

22.     Pursuant to Bankruptcy Rule 2016(b), Proskauer has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Proskauer or (b) any compensation another person or party has received or may receive.

23.     As of the Petition Date, I understand the Debtors did not owe Proskauer any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred but not yet applied to Proskauer's advance payment retainer, the amount of Proskauer's advance payment retainer exceeds any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) prior to the Petition Date.

## **Attorney Statement Regarding Revised U.S. Trustee Guidelines**

24.     Proskauer will apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with its representation of the Debtors in these chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the Court.  Proskauer intends to comply, to the extent applicable, with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Revised UST Guidelines"), both in connection with this application and the interim and final fee applications to be filed by Proskauer in these chapter 11 cases.

25.     The following is provided in response to the request for additional information set forth in Paragraph D.1.  of the Revised UST Guidelines:

> **Question:**   Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?
>
> **Response:**   No.  Proskauer and the Debtors have not agreed to any variations from, or alternatives to, Proskauer's standard billing arrangements for this engagement. The rate structure provided by Proskauer is appropriate and is not significantly different from (a) the rates that Proskauer charges for other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.
>
> **Question:**   Do any of the professionals included in the engagement vary their rate based on the geographic location of the bankruptcy case?
>
> **Response:**   No. The hourly rates used by Proskauer in representing the Debtors are consistent with the rates that Proskauer charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

9

**Question:**    If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Response:**    Proskauer's current hourly rates for services rendered on behalf of the Debtors range as follows:

| Billing Category[4] | U.S. Range |
|---|---|
| Partners | $1,245-$1,595 |
| Of Counsel | $1,100 |
| Associates | $695-$1,075 |
| Paraprofessionals | $465-$540 |

Proskauer represented the Debtors during the twelve-month period before the Petition Date, using the hourly rates listed above.

**Question:**    Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Response:**    Yes.  A 13-week budget has been proposed for professionals in connection with the proposed debtor in possession financing. Staffing will remain consistent with pre-petition staffing.

### Proskauer's Disinterestedness

26.    Except as set forth herein, to the best of my knowledge, information, and belief after due inquiry by me, or attorneys working under my supervision, neither I, Proskauer, nor any member, counsel, or associate of Proskauer currently represents any party in interest or entity other than the Debtors in connection with these chapter 11 cases.

---

[4] Although Proskauer does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Proskauer will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Proskauer will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.  While the rate ranges provided for in this Application may change if an individual leaves or joins Proskauer, or if any such individual's billing rate falls outside the ranges disclosed above, Proskauer does not intend to update the ranges for such circumstances.

27.     In connection with its proposed retention by the Debtors in these chapter 11 cases,

Proskauer undertook to determine whether it has any conflicts or other relationships that might

cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.

Specifically, Proskauer obtained from the Debtors and their representatives, or pulled from

documents, the names of individuals and entities that may be parties in interest in these chapter 11

cases (the "Potential Parties in Interest") and such parties are listed on **Schedule 1** hereto.

Proskauer has searched its electronic database for its connections to the Potential Parties in Interest.

The following is a list of the categories that Proskauer has searched:[9]

| Schedule | Category |
|----------|----------|
| 1(a) | Debtor Affiliates |
| 1(b) | Non-Debtor Affiliates |
| 1(c) | Current and Former Officers & Directors |
| 1(d) | Shareholders |
| 1(e) | Bankruptcy Judges, Bankruptcy Court Staff, US Trustee Personnel – Southern District of Ohio |
| 1(f) | Bankruptcy Professionals |
| 1(g) | Banks, Lender, Administrate Agent |
| 1(h) | Customers |
| 1(i) | Governmental/Regulatory Agencies |
| 1(j) | Insurance – PFA |
| 1(k) | Insurers and Issuers of Surety Bonds |
| 1(l) | Interested Parties |
| 1(m) | Litigation |
| 1(n) | Significant Competitors |
| 1(o) | Taxing Authorities |
| 1(p) | Top 30 Unsecured Creditors |
| 1(q) | Unions |
| 1(r) | Utilities |
| 1(s) | Vendors |

---

[9] Proskauer's inclusion of parties in the following Schedules is solely to illustrate Proskauer's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

28.     To the extent that I have been able to ascertain that Proskauer has been retained within the last three years to represent any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on **Schedule 2** attached hereto.

29.     Proskauer has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations, including entities that have interests in distressed debt and/or distressed entities.  Proskauer has in the past represented, currently represents, and may in the future represent, entities that are claimants of, or interest holders in, the Debtors, in matters unrelated to the Debtors' chapter 11 cases.  Some of these entities are, or may consider themselves to be, creditors or parties in interest in the Debtors' chapter 11 cases or may otherwise have interests in these cases.  Proskauer will not represent such entities in matters related to these chapter 11 cases.  Some of Proskauer's clients in unrelated matters are in the business of buying and selling claims in chapter 11 cases.  Accordingly, without Proskauer's knowledge, it is possible that certain of its clients have or will buy or sell claims against the Debtors' estates during these chapter 11 cases.

30.     The Potential Parties in Interest may have changed without Proskauer's knowledge and may change during the pendency of these chapter 11 cases.  Accordingly, Proskauer will endeavor to update this declaration as necessary and when Proskauer becomes aware of additional material information.

31.     Proskauer has searched its electronic database for its connections to the Potential Parties in Interest.  Listed on **Schedule 2** hereto are the results of Proskauer's conflicts searches of the Potential Parties in Interest.  For the avoidance of doubt, Proskauer will not commence a cause of action in these chapter 11 cases against the entities listed on **Schedule 2** that are current clients

of Proskauer unless Proskauer has an applicable waiver on file or first receives a waiver from such entity allowing Proskauer to commence such an action.  To the extent a waiver does not exist or is not obtained from such entity and it is necessary for the Debtors to commence an action against that entity, the Debtors will be represented in such particular matter by conflicts counsel.

32.     Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither I, Proskauer, nor any partner or associate thereof, insofar as I have been able to ascertain, have any connection with the Debtors, their creditors, or any other parties in interest, their respective attorneys and accountants, the United States Trustee for the Southern District of Ohio (the "U.S. Trustee"), any person employed by the U.S. Trustee, or any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the Southern District of Ohio, except as disclosed or otherwise described herein.

33.     From time to time, Proskauer has referred work to other professionals to be retained in these chapter 11 cases.  Likewise, certain such professionals may have referred work to Proskauer.

34.     Certain insurance companies pay the legal bills of Proskauer clients.  Some of these insurance companies may be involved in these chapter 11 cases.  None of these insurance companies, however, are Proskauer clients as a result of the fact that they pay legal fees on behalf of Proskauer clients.

35.     Based upon the foregoing and the disclosures set forth herein, I believe that Proskauer is a "disinterested person," as such term is defined in Bankruptcy Code section 101(14), as modified by section 1107(b), in that Proskauer, its members, counsel, and associates:

> a.   are not creditors, equity security holders, or insiders of the Debtors or their affiliates;

13

b.  are not and were not, within two (2) years before the Petition Date, a director, officer, or employee of the Debtors or their affiliates; and

c.  do not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or their affiliates, or for any other reason

## **Proskauer's Disclosure Procedures**

36.      In preparing this Declaration, I caused attorneys and professionals working under my supervision to implement a set of procedures (the "Firm Disclosure Procedures") utilized by Proskauer to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding the retention of professionals by a debtor under the Bankruptcy Code.  Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain Proskauer's connection to such parties:

a.      As part of the Firm Disclosure Procedures, Proskauer consulted the list of Potential Parties in Interest in generating the Match List (as defined below).

b.      Proskauer maintains a master client database that it compiles from information obtained through its conflict clearance system and its client billing records (the "Conflicts Database").  I understand that the Conflicts Database includes the names of entities for which any attorney has billed time charges since the database was created, and the name of each current or former client, the names of the parties who are or were related or adverse to such current or former client, and the names of the Proskauer personnel who are or were responsible for current or former matters for such client.  It is Proskauer's policy that no new matter may be accepted or opened within the firm without timely completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties (if known) and, in some cases, parties related to the client or to an adverse party. Accordingly, it is my understanding that the database is updated for every new matter undertaken by Proskauer.  The accuracy of the system is a function, in part, of the completeness and accuracy of the information submitted by the attorney opening a new matter.

14

c.    In applying the Firm Disclosure Procedures, Proskauer compared the names of each of the Potential Parties in Interest against the names contained in Proskauer's Conflicts Database for which professional time was recorded during the three (3) years prior to the comparison. Any matches between the names on the list of Potential Parties in Interest and those in the Conflicts Database were compiled in a list, together with the names of the respective Proskauer personnel responsible for the identified client matters (the "Match List").

d.    A Proskauer attorney was instructed to then review the Match List and delete obvious name coincidences and individuals or entities that were adverse to Proskauer's clients in the matter referenced on the Match List.

e.    Using information in the Conflicts Database relating to entities on the Match List, and making general and, where applicable, specific inquiries of Proskauer personnel, Proskauer verified that it does not represent and has not represented any entity on the Match List in a matter connected to the Debtors, or these chapter 11 cases, except as specified herein.

f.    In addition, a general inquiry to all Proskauer personnel (attorneys and staff) was sent by electronic mail to determine whether any such individual, his or her spouse, minor children, or family members living in his or her household: (i) owns any equity security of the Debtors or any of their affiliates; (ii) owns any debt security of the Debtors or any of their affiliates; (iii) holds a general unsecured claim against the Debtors or any of their affiliates; (iv) holds any other claim against the Debtors or any of their affiliates; (v) is or was, within the last two (2) years, an officer, director, or employee of the Debtors or any of their affiliates; (vi) holds an interest materially adverse to the interest of the Debtors or any of their affiliates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or any of their affiliates, or for any other reason; or is related to any Judge of the United States Bankruptcy Court for the Southern District of Ohio and/or any employee of the Office of the United States Trustee for Region 9. Responses to such inquiry are summarized in **Schedule 2**.

37.    Proskauer will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Proskauer will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## **Specific Disclosures**

38.     As is specifically set forth below and in **Schedule 2**, Proskauer represents, or has previously represented, certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest, in ongoing matters unrelated to the Debtors and these chapter 11 cases.   All such connections were diligently reviewed by an attorney working under my supervision or the supervision of my colleagues.   From such review, it was determined that Proskauer has the following connections to certain of the Debtors' creditors or other entities that may be parties in interest in ongoing matters unrelated to the Debtors and these chapter 11 cases. None of the representations described herein are materially adverse to the interests of the Debtors' estates, and Proskauer is a "disinterested person" as such term is defined in the Bankruptcy Code. Moreover, pursuant to section 327(c) of the Bankruptcy Code, Proskauer is not disqualified from acting as the Debtors' counsel merely because it represents certain of the Debtors' creditors or other Potential parties in interest in matters unrelated to these chapter 11 cases.

39.     As disclosed in **Schedule 2**, Proskauer currently represents, and in the past represented, certain of the Debtors' vendors, including WESCO International Inc., WESCO, and Aramark, and certain of their affiliates and subsidiaries in a variety of matters.  Proskauer has not represented and will not represent any of the vendors in these chapter 11 cases or any matters related to the Debtors.  I do not believe Proskauer's current or former representation of the vendors precludes Proskauer from meeting the disinterestedness standard under the Bankruptcy Code.

40.     As disclosed in **Schedule 2**, Proskauer currently represents, and in the past represented, certain of the Debtors' insurers and issuers of surety bonds, including Hiscox, Markel Bermuda, and RSUI, and certain of their affiliates and subsidiaries in a variety of matters. Proskauer has not represented and will not represent any of the insurers in these chapter 11 cases

16

or any matters related to the Debtors.  I do not believe Proskauer's current or former representation of the vendors precludes Proskauer from meeting the disinterestedness standard under the Bankruptcy Code.

### Proskauer Personnel Inquiry

41.     As noted, Proskauer has conducted a general inquiry of Proskauer personnel (attorneys and staff) by electronic mail to determine whether any such individual, his or her spouse, minor children, or family members living in his or her household: (a) owns any equity security of the Debtors or any of their affiliates; (b) owns any debt security of the Debtors or any of their affiliates; (c) holds a general unsecured claim against the Debtors or any of their affiliates; (d) holds any other claim against the Debtors or any of their affiliates; (e) is or was, within the last two (2) years, an officer, director, or employee of the Debtors or any of their affiliates; (f) holds an interest materially adverse to the interests of the Debtors, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or any of their affiliates, or for any other reason; or (g) is related to any Judge of the United States Bankruptcy Court for the Southern District of Ohio and/or any employee of the Office of the United States Trustee for Region 9.  The responses to this personnel inquiry were as follows.

42.     Prior to joining Proskauer, while working at a firm other than Proskauer, Proskauer partner David M. Hillman represented Murray Energy Corporation ("Murray") in matters relating to the Debtors' acquisition of assets from Mission Coal Company ("Mission") in Mission's chapter 11 cases filed on October 14, 2018.  I do not believe Mr. Hillman's prior representation of Murray precludes Proskauer from meeting the disinterestedness standard under the Bankruptcy Code.

43.    Proskauer Partner Michael J. Album formerly represented the Compensation Committee of WESCO, one of the Debtors' vendors, and currently represents Med Express Urgent Care, PC, another of the Debtors' vendors, on various corporate matters unrelated to these chapter 11 cases. I do not believe Mr. Album's current and prior representation of these vendors precludes Proskauer from meeting the disinterestedness standard under the Bankruptcy Code.

44.    Prior to joining Proskauer, Proskauer associate Bradley A. Schecter represented two of the Debtors' significant competitors, Arch Coal, Inc. and Contura Energy Inc., in matters unrelated to these chapter 11 cases. I do not believe Mr. Schecter's prior representation of these competitors precludes Proskauer from meeting the disinterestedness standard under the Bankruptcy Code.

45.    Proskauer partner Robert Leonard represents a 20% equity owner of Blackhawk Mining, LLC, one of the Debtors' competitors, in unrelated corporate matters. I do not believe Mr. Leonard's representation of this equity owner precludes Proskauer from meeting the disinterestedness standard under the Bankruptcy Code.

46.    Proskauer partner Ira Golub represents AmeriPride, the entity that owns Aramark, one of the Debtors' vendors, in employment matters unrelated to these chapter 11 cases. I do not believe Mr. Golub's representation of AmeriPride precludes Proskauer from meeting the disinterestedness standard under the Bankruptcy Code.

## Affirmative Statement of Disinterestedness

47.    Based on the conflicts search conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) Proskauer is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates

18

and (b) Proskauer has no connection to the Debtors, their creditors, or other parties in interest except as may be disclosed herein.

48.      Proskauer will continue to apply the Firm Disclosure Procedures as additional information is developed and, as necessary, will file appropriate supplemental disclosures with the Court.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge and belief.


Dated: February 20, 2020                    Respectfully submitted,

                                            Timothy Q. Karcher
                                            as Partner of Proskauer Rose LLP

## **Schedule 1**

**Potential Parties in Interest**

## <u>LIST OF POTENTIAL PARTIES IN INTEREST</u>

| <u>Schedule</u> | <u>Category</u> |
|---|---|
| 1(a) | Debtor Affiliates |
| 1(b) | Non-Debtor Affiliates |
| 1(c) | Current and Former Officers & Directors |
| 1(d) | Shareholders |
| 1(e) | Bankruptcy Judges, Bankruptcy Court Staff, US Trustee Personnel – Southern District of Ohio |
| 1(f) | Bankruptcy Professionals |
| 1(g) | Banks, Lender, Administrate Agent |
| 1(h) | Customers |
| 1(i) | Governmental/Regulatory Agencies |
| 1(j) | Insurance – PFA |
| 1(k) | Insurers and Issuers of Surety Bonds |
| 1(l) | Interested Parties |
| 1(m) | Litigation |
| 1(n) | Significant Competitors |
| 1(o) | Taxing Authorities |
| 1(p) | Top 30 Unsecured Creditors |
| 1(q) | Unions |
| 1(r) | Utilities |
| 1(s) | Vendors |

## SCHEDULE 1(a)

### Debtor Affiliates

AMCA Coal Leasing Inc.
AmCoal Holdings Inc.
American Coal Co., The
American Coal Sales Co., The
American Compliance Coal Inc.
American Energy Corp.
American Equipment & Machine Inc.
American Mine Services Inc.
American Natural Gas Inc.
Americanhocking Energy Inc.
Americanmountaineer Energy Inc.
Americanmountaineer Properties Inc.
Anchor Longwall & Rebuild Inc.
Andalex Resources Inc.
Andalex Resources Management Inc.
Avonmore Rail Loading Inc.
Belmont Coal Inc.
Belmont County Broadcast Studio Inc.
Canterbury Coal Co.
CCC Land Resources LLC
CCC RCPC LLC
Central Ohio Coal Co.
Coal Resources Holdings Co.
Coal Resources Inc.
Consolidated Land Co.
Consolidation Coal Co.
Corporate Aviation Services Inc.
Eighty-Four Mining Co.
Empire Dock Inc.
Energy Resources Inc.
Energy Transportation Inc.
Franklin County Coal Co., The
Harrison County Coal Co., The
Kanawha Transportation Center Inc.
Kenamerican Resources Inc.
Keystone Coal Mining Corp.
Maple Creek Mining Inc.
Maple Creek Processing Inc.
Marion County Coal Co., The
Marshall County Coal Co., The
Mcelroy Coal Co.

Mclean County Coal Co., The
Meigs County Coal Co., The
Mill Creek Mining Co.
Mon River Towing Inc.
Monongalia County Coal Co., The
Monvalley Transportation Center Inc.
Muhlenberg County Coal Co. LLC, The
Murray Alabama Coal LLC
Murray Alabama Minerals LLC
Murray American Coal Inc.
Murray American Energy Inc.
Murray American Kentucky Towing Inc.
Murray American Minerals Inc.
Murray American Resources Inc.
Murray American River Towing Inc.
Murray American Transportation Inc.
Murray Colombian Resources LLC
Murray Eagle Mining LLC
Murray Energy Corp.
Murray Energy Holdings Co.
Murray Equipment & Machine Inc.
Murray Global Commodities Inc.
Murray Kentucky Energy Inc.
Murray Kentucky Energy Services Inc.
Murray Keystone Processing Inc.
Murray Maple Eagle Coal LLC
Murray Metallurgical Coal Holdings LLC
Murray Oak Grove Coal LLC
Murray South America Inc.
Murray Utah Energy Services Inc.
Muskingum County Coal Co., The
Ohio County Coal Co., The
Ohio Energy Transportation Inc.
Ohio Valley Coal Co., The
Ohio Valley Resources Inc.
Ohio Valley Transloading Co., The
Ohioamerican Energy Inc.
Oklahoma Coal Co., The
Oneida Coal Co. Inc.
Patton Mining LLC
Pennamerican Coal Inc.

Pennamerican Coal LP
Pennsylvania Transloading Inc.
Pinski Corp.
Pleasant Farms Inc.
Premium Coal Inc.
Southern Ohio Coal Co.
Spring Church Coal Co.
Sunburst Resources Inc.
TDK Coal Sales Inc.
Twin Rivers Towing Co.
Umco Energy Inc.
Utahamerican Energy Inc.
Washington County Coal Co., The

West Ridge Resources Inc.
West Virginia Resources Inc.
Western Kentucky Coal Co. LLC, The
Western Kentucky Coal Resources LLC
Western Kentucky Consolidated Resources
LLC
Western Kentucky Land Holding LLC
Western Kentucky Rail Loadout LLC
Western Kentucky Resources Financing
LLC
Western Kentucky Resources LLC
Western Kentucky River Loadout LLC

## SCHEDULE 1(b)

### Non-Debtor Affiliates

Murray Metallurgical Coal Properties II LLC
Murray Metallurgical Coal Properties LLC
Murray Utah Energy Inc.
Adena Resources LLC
Akin Energy LLC
American Century Mineral LLC
American Century Transport LLC
CI Colombian Natural Resources I SAS
CNRillLtd.
CNR m Ltd. Sucursal Colombia
CNR Marketing Ltd.
CNR Transport SAS
Coal Field Construction Co. LLC
Coal Field Repair Services LLC
Colombian Natural Resources II SAS
Fenoco Shares
Foresight Coal Sales LLC
Foresight Energy Employee Services Corp.
Foresight Energy Finance Corp.
Foresight Energy GP LLC
Foresight Energy Labor LLC
Foresight Energy LLC
Foresight Energy LP
Foresight Energy Services LLC

Foresight Receivables LLC
Fundacion Colombian Natural Resources I
Genwal Resources Inc.
Hillsboro Energy LLC
Hillsboro Transport LLC
Javelin Global Commodities Holdings LLP
Javelin Investment Holdings LLC
LD Labor Co. LLC
Logan Mining LLC
Mach Machining LLC
Macoupin Energy LLC
Maryan Mining LLC
M-Class Mining LLC
Natural Resources Investments SI
Nri Cayman Ltd
OeneusLLC
Seneca Rebuild LLC
SitranLLC
Sociedad Portuaria Rio Cordoba SA
Sugar Camp Energy LLC
Tanner Energy LLC
Thoroughbred Resources LP
Viking Mining LLC
Williamson Energy LLC

## **SCHEDULE 1(c)**

## **Current/Former Officers & Directors**

Robert E. Murray
Robert D. Moore
Peter Bradley
Steven P. Zimmer
Paul B. Piccolini
James R. Turner
Jason D. Witt
Anthony C. Vcelka, II
James M. Spigarelli
Ronnie D. Dietz
Eric G. Koontz
Charles H. Cremens

## **SCHEDULE 1(d)**

### **Shareholders**

Javelin Investment Holdings, LLC
Murray Metallurgical Coal Properties, LLC

## SCHEDULE 1(e)

## Bankruptcy Judges, Bankruptcy Court Staff, US Trustees Personnel – Southern District of Ohio

Atack, Laura
Austin, David
Behnken, Joni
Berman, Neil
Brewster, Emily
Brown, Glenn
Buchanan, Beth A.
Caldwell, Charles M.
Cunningham,A.Ryan
Dorton, Kelsey
Fisher, Karli
Gifford, Brian
Hoffman, John E., Jr.
Hopkins, Jeffery P.
Humphrey, Guy R.
Kindt, Monica
McDermott, Daniel M.
Meena, Allison
Militello, Colleen
Mills, Stacy
Orozco, Agueda
Preston, C. Kathryn
Stansell, Clayton
Vickers, Kristie
Wehrmann, Kristin
Wilsbacher, MaryAnne

## SCHEDULE 1(f)

### Bankruptcy Professionals

Allen Stovall Neuman Fisher & Ashton, LLP
Alvarez & Marsal
Evercore Group LLC
Prime Clerk

## **SCHEDULE 1(g)**

### **Banks/Lender/Administrative Agents**

Castlelake, LP
Coal Specialty Funding, LLC
Huntington National Bank
Javelin Global Commodities (UK) LTD
MC Southwork LLC
Wilmington Savings Fund Society, FSB

## **SCHEDULE 1(h)**

## **Customers**

Javelin Global Commodities (UK), LTD.

## **SCHEDULE 1(i)**

### **Governmental/Regulatory Agencies**

Alabama, State of, Department of Environmental Management
Alabama, State of, Department of Labor
Alabama, State of, Surface Mine Commission
Mannington, City of (WV)
United States, Government of the Department of Agriculture Forestry Service
United States, Government of the, Army Corps of Engineers
United States, Government of the, Department of Labor, Mine Safety & Health Administration
United States, Government of the, Department of the Interior
United States, Government of the, Environmental Protection Agency
West Virginia, State of, Department of Environmental Protection
West Virginia, State of, Department of Transportation
West Virginia, State of, Miners Safety & Health
West Virginia, State of, Public Service Commission

## SCHEDULE 1(j)

### Insurance – PFA

AIG National Union Fire Insurance
Arch Bermuda
Argo Bermuda
Arise Boiler Inspection and Insurance Company Risk Retention Group
Ascot Insurance Company
Ascot Insurance Company
Atlantic Specialty
AWAC Bermuda
Axis USA
Beazley
Continental Insurance Co
HIIG
Illinois National Insurance Co
Ironshore Specialty Insurance Company
Lexington Insurance Company
Liberty
Liberty Bermuda
Lloyd's (Amtrust)
Lloyd's (Beazley Led)
Lloyd's (Markel Led)
Lloyds Apollo Liability Consortium
Lloyds Apollo Liability Consortium/ Amtrust Casualty Consortium
Lloyd's Apollo Liability Consortium/ Hiscox
Markel Bermuda
National Union Fire Insurance Co
Navigators Insurance Co.
NOA
OCIL Bermuda
Rockwood Casualty Insurance Company
RSUI Indemnity
Safe Harbor Pollution
Starr Surplus Lines Insurance Company
The Insurance Co of the State of PA
The Travelers Indemnity Co.
Travelers Indemnity Company
Underwriters at Lloyds, London
USAIG
West of England

## **SCHEDULE 1(k)**

### **Insurers and Issuers of Surety Bonds**

Indemnity National Insurance Company
Alabama Surface Mining Commission
West Virginia Department of Environmental Protection
West Jefferson Minerals, LLP
WPP, LLC

## **SCHEDULE 1(l)**

## **Interested Parties**

Anthem
BankDirect Capital Finance
CBIZ, Inc.
Huntington National Bank
Prudential
Reschini Agency, Inc.
CAC Specialty
Transamerica

## SCHEDULE 1(m)

### Litigation

AHR Metals, Inc.
Bulldog Excavating, LLC
Cayce Mill Supply Company, Inc.
Ceramic Technology, Inc.
Communications Supply Corporation
Crane Man, Inc.
Double S, LLC dba Doss Electric
Kanawha Scales and Systems, Inc.
Kendall Electric Inc.
Lincoln Contracting & Equipment Co., Inc.
Mayer Electric Supply Company Inc.
Mosebach Electric & Supply
New River Engineering, Inc.
Powellton Minerals LLC
RGGS Land & Minerals, Ltd., L.P.
Southeastern Conveyor Services, Inc.
United Rentals
WESCO Distribution, Inc.
White Armature

## **SCHEDULE 1(n)**

### **Significant Competitors**

Alliance Resource Partners LP
Arch Coal Inc.
Blackhawk Mining LLC
CONSOL Energy Inc.
Contura Energy Inc.
Coronado Coal LLC
Hallador Energy Co.
Peabody Energy Corp.
Warrior Met Coal Intermediate Holdco LLC
Wolverine Fuels LLC

## **SCHEDULE 1(o)**

### **Taxing Authorities**

Alabama Department of Revenue
Alabama Department of Revenue - Individual and Corporate Tax Division
Concord Fire District
United States Department of the Treasury
Electronic Federal Tax Payment System
Fayette County Revenue Commissioner
Fayette County Sheriff
Jefferson County Assistant Tax Collector
Jefferson County Dept. of Revenue
Jefferson County Tax Collector
Mine Safety and Health Administration
Office of Fayette County Sheriff
Office of Surface Mining
Public Service Commission of West Virginia
State of Delaware - Secretary of State
Tuscaloosa Tax Collector
West Virginia Secretary of State
West Virginia State Tax Department

## SCHEDULE 1(p)

## Top 30 Unsecured Creditors

A & A Resources Inc
AHR Metals Inc
American Mine Power, Inc.
Baker Hughes Oilfield Operations LLC
Bay Point Capital Partners LP
Big M Excavating Inc
C & A Cutter Head, Inc.
Dyson Conveyor Maintenance Inc
Fuchs Lubricants Co.
Global Mine Service, Inc.
IDC Industries, Inc.
Industrial Mining Supply Inc
J.H. Fletcher & Company
Jeffrey C Hurt
Jennmar Corporation
Joy Global
Kelley Brothers Contractors, Inc
Motion Industries, Inc.
Natural Resource Partners WPP LLC C/O NRP (Operating) LLC
R M Wilson Co
Richwood Industries, Inc.
Rockwood Casualty Insurance
Strata Products (USA) LLC
Terrapro LLC
Thompson Tractor Company
UMWA Health And Retirement Funds
United Central Ind. Supply Co. LLC
W J Graham Inc
WC Hydraulics, LLC
White Armature Works

## <u>SCHEDULE 1(q)</u>

### <u>Unions</u>

Seafarers International Union
United Mine Workers of America

## **SCHEDULE 1(r)**

### **Utilities**

Alabama Power
Appalachian Power
Armstrong Deepwater PSD
Berry Water Dept.
City of Bessemer – Bessemer Utilities
Lingo/Impact
Lusk Disposal Service
Moore Coal Co. Inc.
Mountaineer Gas Co.
Republic Services
Spectrum Business
Spire
Suddenlink
Warrior River Water Authority

## SCHEDULE 1(s)

### Vendors

A & A RESOURCES  INC
A & A SUPPLIES INC.
A C E WELDING INC
A PLUS PORTABLE RESTROOMS INC
A.W. CHESTERTON CO.
AAA MINE SERVICE
ACF ENVIRONMENTAL, INC.
ADVANCE MINING SERVICES
AFLAC
AHR METALS INC
AIRGAS INC
AIRGAS SOUTH
ALABAMA SLING CENTER
ALABAMA SURFACE MINING COMM
ALLIANCE SPECIALTY MOTORS INC
AMERICAN BLOCK COMPANY, INC.
AMERICAN ELECTRIC EQUIPMENT
INC
AMERICAN MINE POWER, INC.
AMERICAN MINE RESEARCH INC
AMERICAN PRODUCERS SUPPLY CO.,
INC.
AMY SCARBERRY
ANALABS INCORPORATED
ANTHEM BLUE CROSS AND BLUE
SHIELD
APPALACHIAN AGGREGATES LLC
APPALACHIAN POWER
APPALACHIAN TIRE PRODUCTS,INC.
ARAMARK
ARAMARK UNIFORM SERVICES
ARIDEA SOLUTIONS LLC
ARKOS FIELD SERVICES LP
ARMSTRONG PUBLIC SERVICE
DISTRICT
BAKER HUGHES OILFIELD
OPERATIONS LL
BAY POINT CAPITAL PARTNERS LP
BELL FARMS RECLAMATION
SERVICE
BELT TECH INC

BERRY WATER DEPARTMENT
BESCO STEEL SUPPLY INC
BESSEMER FASTENER & SUPPLY INC.
BEVILL STATE COMMUNITY
COLLEGE
BIG M EXCAVATING
BINGHAM GREENEBAUM DOLL LLP
BRADLEY ARANT BOULT CUMMINGS
LLP
BRAKE SUPPLY CO., INC.
BRIDGEPORT SUPPLY COMPANY
BROOKVILLE EQUIPMENT
CORPORATION
BROOKVILLE SERVICES LLC
BROWNLEE MORROW CO INC
BRUCE SMITH
BUCHANAN PUMP SERVICE &
SUPPLY
BULLDOG EXCAVATING
BURRELL MINING PRODUCTS UTAH
INC
BYTE SIZE INC
C & A CUTTER HEAD, INC.
CAI Industries Inc
CAPSTONE OILFIELD SERVICE LLC
Caraddock
CARROLL ENGINEERING CO.
CAVCO INC
CAYCE MILL SUPPLY
CB MINING, INC.
CB TRUCKING INC
CECIL I WALKER MACHINERY CO
CENTRIFUGAL SERVICES LLC
CENTURYTEL OF ALABAMA
CERAMIC TECHNOLOGY INC
CERTEX USA, INC
CHAMPION MINE SUPPLY, INC.
CHEMSTREAM, INC.
CINCINNATI MINE MACHINERY CO.
CITY OF BESSEMER-BESSEMER
UTILITIES

COALFIELD CONSTRUCTION
COMPANY LLC
COALFIELD LUMBER COMPANY INC
COALFIELD SERVICES, INC.
COALMONT ELECTRICAL
COGAR MANUFACTURING
COMTROL INTERNATIONAL
CONN-WELD INDUSTRIES, INC.
CONSOLIDATED PIPE & SUPPLY CO
INC
CONTINENTAL MESSAGE SOLUTION
INC
COWIN EQUIPMENT CO. INC.
CRAMER SECURITY &
INVESTIGATIONS, I
CRANEMAN INC
CRANEWORKS INC.
CROSIERS SANITATION SERVICE
CROWN BATTERY MFG. CO.
CROWN HILL EQUIPMENT INC
CROWN PRODUCTS & SERVICES INC
CRUSHER WORKS LLC
CSE CORPORATION
CUDA BITS LLC
CUSTOM ENGINEERING, INC.
CW SERVICES, INC.
D & G MACHINE CO., INC.
D&D TRANSPORT INC
Date Mining
DAVIS ELECTRIC COMPANY, INC.
DEDICATED LINE SERVICE INC
DELTA ELECTRIC, INC.
DINSMORE & SHOHL LLP
DIRT DESIGNS 1 LLC
DOSS ELECTRIC
DOSS ENGINEERING INC
DRY SYSTEMS TECHNOLOGIES LLC
DYSON CONVEYOR MAINTENANCE
INC.
EASTERN MACHINE & CONVEYORS
EDGE LUMBER CO INC
ELECTRO-QUIP SERVICE CORP
ENERSYS, INC.
ERIC KOONTZ
ERIKS NORTH AMERICA INC
FEDEX

FIRE & SAFETY INC
FIXXIT MACHINE SERVICES INC
FKC-LAKESHORE
FLANDERS ILLINOIS
Flsmidth
FORESIGHT ENERGY LP
FOURT INDUSTRIAL SUPPLIES INC
FUCHS LUBRICANTS CO.
GALLAGHER COAL RESEARCH
CENTER INC.
GARY L DAVIS
GATES SUPPLY COMPANY
GAULEY-ROBERTSON COMPANY
GLOBAL MINE SERVICE, INC.
GMS MINE REPAIR & MAINTENANCE
GRAINGER
HAGER EQUIPMENT CO OF AL INC
HARDLINE FASTENERS INC
HD MEDIA COMPANY LLC
HEAVY MAINTENANCE SUPPLY INC
HERITAGE COOPERATIVE INC
HIGHLAND MACHINERY
CORPORATION
HMG SERVICES INC
HODGE HUNTER
HORIZON INFORMATION SERVICES
INC
HOYA OPTICAL LABS OF AMERICA
HUFFMAN TRUCKING CO
HUGHES OFFICE EQUIPMENT, LLC
HURLEY CONSTRUCTION, INC.
HYDRA SERVICE INC
ICR EQUIPMENT RENTAL & SUPPLY
LLC
IDC INDUSTRIES, INC.
IMPACT TELECOM LLC
INDUSTRIAL COMMERCIAL
RESIDENTIAL
INDUSTRIAL MINING SUPPLY INC
INDUSTRIAL SAFETY PLUS LLC
INDUSTRIAL SERVICE &
ELECTRONICS
INFRARED TECHNOLOGIES, INC.
INTER-STATE TREATED MATERIAL
IRWIN MINE & TUNNELING SUPPLY
J & S TRANSPORT, INC.

J.H. FLETCHER & COMPANY
JABO SUPPLY CORP.
JADCO MANUFACTURING, INC.
JAY INDUSTRIAL REPAIR INC
JEFFREY C HURT
Jennmar
JIM HOUSE & ASSOCIATES INC
JOHNSON INDUSTRIES, INC.
JONES MACHINE & WELDING CO INC
Joy Global
KAMAN INDUSTRIAL TECHNOLOGIES
KANAWHA SCALES & SYSTEMS, INC.
KELLEY BROTHERS CONTRACTORS, INC
KELLIS VEGETATION MANAGEMENT
KENDALL ELECTRIC INC
KENS TIRE & WHEEL INC
KERCO, INC.
KEVIN W PAN
KH CONTROLS, INC.
KONE INC.
KRISTIE BAGGETT
KSD ENTERPRISES LLC
KYKENKEE, INC
LARROL SUPPLY, INC.
LEAF
LEE RODGERS TIRE COMPANY
LEE SUPPLY CO., INC.
LEICA GEOSYSTEMS INC
LENSCRAFTERS
LIMESTONE DUST CORPORATION
LINCOLN CONTRACTING & EQUIP CO INC
LONGWALL ASSOCIATES, INC.
LONGWALL MINING SERVICES (LMS)
LONGWALL WEST, INC.
LUSK DISPOSAL SERVICE INC
MABSCOTT SUPPLY COMPANY
MANKIN EQUIPMENT INC
MARMIC FIRE & SAFETY CO., INC.
MARSICO BROTHERS INC
MASTER MACHINE COMPANY
MATHESON TRI-GAS, INC.
MATO CORPORATION
MAXIM CRANE WORKS LP
MAYER ELECTRIC SUPPLY CO INC

MAYO MANUFACTURING COMPANY, INC.
MCGEHEE ENGINEERING CORP.
MCGHEE & COMPANY
MCMASTER-CARR SUPPLY COMPANY
MECHANICAL & CERAMIC SOLUTIONS, INC
MED EXPRESS URGENT CARE, PC - WV
MICHAEL S JORDAN
MILLER WIRE WORKS, INC.
MINE AND MILL SUPPLY COMPANY LLC
MINE POWER SYSTEMS INC
MINERAL LABS, INC.
MINERAL TECHNOLOGIES INC
MINING CONTROLS LLC
MISSCO
MOHLER TECHNOLOGY, INC.
MOMAR INC
MON VALLEY INTEGRATION LLC
MONTROSE AIR QUALITY SERVICES LLC
MOORE COAL COMPANY INC
Morgantown
MORRIS-COKER, INC.
MOSEBACH ELECTRIC & SUPPLY CO.
MOTION INDUSTRIES, INC.
MOUNTAINEER GAS COMPANY
MSHA - ADMINISTRATION & MANAGEMENT
MURRAY ENERGY CORP PAC FUND
MW INDUSTRIAL SERVICES ,LLC
NABORS RADIATOR & ELECTRIC
NATIONAL MILL MAINTENANCE , LLC
NATURAL RESOURCE PARTNERS
NEW RIVER ENGINEERING INC
NEWBRIDGE SERVICES INC.
NEXGEN INDUSTRIAL SERVICES, INC.
NICHOLAS PARRISH
NORRIS SCREEN & MFG, LLC
NORTHCO CORPORATION
NORTON COMMUNITY PHYSICIAN SERVICES
OCCUPATIONAL HEALTH CENTERS

OCCUPATIONAL HEALTH CLINICS LLC
OGLETREE DEAKINS NASH SMOAK & STEWA
OLDCASTLE APG SOUTH
PARTSMASTER/X-ERGON
PAUL'S FAN COMPANY
PENSE BROS DRILLING CO INC.
PETITTO MINE EQUIPMENT, INC.
PHILLIPS MACHINE SERVICE, INC.
PHOENIX PROCESS EQUIPMENT CO
PIKEVILLE MINING TIRE SALES INC
PILLAR INNOVATIONS LLC
PIONEER CONVEYOR LLC
POLYDECK SCREEN CORPORATION
POWELLTON MINERALS LLC
POWER TECHNOLOGIES LLC
PRECISION SAMPLERS, INC.
PREISER SCIENTIFIC, INC.
PRUDENTIAL GROUP INSURANCE
QUALITY HYDRAULICS, INC.
QUALITY MAGNETITE, LLC
R & M EQUIPMENT RENTALS INC
R M WILSON CO
RAMSEY EXCAVATING
RAW RESOURCES LLC
RAYMOND SMATHERS
RECORDER CHARTS & PENS
REFERENCE SERVICES INC
REPUBLIC SERVICES INC
RESCHINI AGENCY, INC.
RGGS LAND & MINERALS LTD LP
RGGS LAND & MINERALS, LTD., LP
RICE ELECTRIC
RICHARD WILBUR III
RICHWOOD INDUSTRIES, INC.
RISH EQUIPMENT COMPANY
ROBERT H KLATT
ROCKMOUNT RESEARCH & ALLOYS, INC.
ROCKWOOD CASUALTY INSURANCE COMPANY
ROGERS ELECTRICAL CONTRACTING CO IN
ROYAL BRASS AND HOSE
ROYAL HYDRAULIC SERVICE & MFG.

RSO SERVICES INC
RUDD EQUIPMENT COMPANY
RUSMAR INC.
S & T WELDING COMPANY INC
SAFETY KLEEN, INC.
SAMUEL BILICA
SATURN BRONZE, INC.
SCOTT CRAFTON
SECURITY ASSOCIATES OF ALABAMA LLC
SEETECH, LLC
SERVICE PUMP & SUPPLY, INC.
SEWARD & KISSEL LLP
SHOOK & FLETCHER SUPPLY COMPANY
SILVER SPUR CONVEYORS
SILVER STATE WIRE ROPE & RIGGIN
SIMPSON & SONS SERVICE INC
SKY ELECTRICAL CONTRACTORS LLC
SMC ELECTRICAL PRODUCTS, INC.
SNF MINING INC
SOHAM GROUP LLC
SOURCE ONE LEGAL COPY INC.
SOUTHEASTERN CONVEYOR SERVICES, INC
SOUTHWEST WATER COMPANY SPECTRUM
SPECTRUM INDUSTRIAL SERVICES LLC
SPIRE INC.
SPRAYING SYSTEMS CO.
STACEY BROWN NUTTER
STAHURA CONVEYOR PRODUCTS INC
STATE ELECTRIC SUPPLY COMPANY
STEELCON SUPPLY CO.
STONEBRAKER'S GARAGE LTD
STONEBRAKER'S TRANSIT LLC
STORMY MCCOY
Strata
STUART ZEEH
SUDDENLINK COMMUNICATIONS
SUMITON MACHINE INC
SUNRISE HOSPITALITY LLC
SUPERIOR INDUSTRIAL SOLUTIONS, LLC

SWANSON INDUSTRIES, INC.
SYSTEM CONTROLS, INC.
TABOR MACHINE COMPANY
TASSCO, LLC
TAYLOR ELECTRICAL CONTRACTORS
INC
TELLUS CONSULTING GROUP LLC
TERRAPRO LLC
TETRA TECH NUS, INC.
THE DANIELS COMPANY
THE JOHN B. LONG COMPANY, LLC
THE MEADOR BOYS EXPRESS, INC.
THE PRINTING HOUSE INC
THE TEA LIME COMPANY
THE WILSON BOHANNAN COMPANY
THERMO ENVIRONMENTAL INST. LLC
THOMPSON LIFT TRUCK COMPANY
THOMPSON TRACTOR COMPANY INC
THORNTON WELDING & MACHINE
INC
TIMBERLAND & MINERALS LLC
TRACTOR & EQUIPMENT CO INC
TRANSPORTATION FUNDING GROUP,
INC.
TRINITY CONSULTANTS, INC.
TSMITH TOOL COMPANY LLC
TUSCALOOSA TAX COLLECTOR
UMWA 1993 BENEFIT TRUST
UMWA GENERAL FUND
UMWA STRIKE FUND
UNDERGROUND RESPONSE, LLC
UNITED CENTRAL IND. SUPPLY CO.
LLC
UNITED MINING EQUIPMENT, INC.
UNITED RENTALS, INC.
UNIVERSAL COAL FILTER AND
SUPPLY
URGENT CARE NORTHWEST
USA ENERGY COMPANY LLC
USBPTC
VIDEO INDUSTRIAL SERVICES INC
VIKING OFFICE SUPPLY INC
VIRGINIA DRILLING CO LLC
VOTO MANUFACTURERS SALES CO.
W & B FABRICATORS INC
W J GRAHAM INC

WALLACE ELECTRICAL SYSTEMS
LLC
WARCO SALES, INC.
WC HYDRAULICS, LLC
WESCO
WESCO DISTRIBUTION, INC.
WEST JEFFERSON MINERALS LP
WEST RIVER CONVEYORS &
MACHINERY CO
WHAYNE SUPPLY COMPANY
WHITE ARMATURE WORKS INC
WILLIAM J. SIPLIVY PE INC.
WILLIAMS KILPATRICK, PLLC
WILSON MACHINE & WELDING INC
WM. W. MEYERS & SONS, INC.
XEROX FINANCIAL SERVICES
ZMJ AMERICA INC

## **Schedule 2**

**Results of Conflicts Search**

**SCHEDULE 2**

| Matched Entity | Category of Party in Interest | Relationship to Proskauer |
|---|---|---|
| American Energy Corp. | Debtor Affiliates | Affiliate of Former Client |
| Murray Energy Corporation | Debtor Affiliates | Former Client |
| Foresight Energy LP | Non-Debtor Affiliates | Potential Affiliate of Former Client |
| Alvarez & Marsal | Bankruptcy Professionals | Former Client |
| Castlelake, L.P. | Banks/Lender/Administrative Agents | Former Client |
| AIG National Union Fire Insurance | Insurance – PFA | Potential Affiliate of Former Client |
| Hiscox | Insurance – PFA | Former Client |
| Liberty | Insurance – PFA | Potential Affiliate of Former Client |
| Lloyds | Insurance – PFA | Potential Affiliate of Former Client |
| Markel Bermuda | Insurance – PFA | Affiliate of Current Client |
| RSUI | Insurance – PFA | Affiliate of Current Client |
| Starr Surplus Lines Insurance Company | Insurance – PFA | Potential Affiliate of Former Client |
| Anthem | Interested Parties | Potential Affiliate of Former Client |
| Peabody Energy Corporation | Significant Competitors | Former Client |
| Jefferson County | Taxing Authorities | Affiliate of Former Client |
| ACF Environmental, Inc. | Vendors | Potential Affiliate of Former Client |
| Aramark | Vendors | Affiliate of Current Client |
| Aramark | Vendors | Former Client |
| Bradley Arant Boult Cummings | Vendors | Former Client |
| Fedex | Vendors | Former Client |
| Kone, Inc. | Vendors | Former Client |
| Longwall Associates, Inc. | Vendors | Potential Affiliate of Former Client |
| Mayo Manufacturing Company | Vendors | Potential Affiliate of Former Client |
| Ogletree, Deakins, Nash, Smoak & Stewart, P.C. | Vendors | Counsel to Current and Former Pro Bono Clients |

| Pillar Data Systems | Vendors | Former Client |
|---|---|---|
| WESCO International Inc. | Vendors | Former Client |
| WESCO | Vendors | Affiliate of Former Client |
| W.W. Grainger, Inc. | Vendors | Former Client |

## **Exhibit C**

**McKown Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MURRAY METALLURGICAL COAL | ) | Case No. 20-10390 (JEH) |
| HOLDINGS, LLC, *et al.*,[1] | ) | |
| | ) | Judge John E. Hoffman, Jr. |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF MICHAEL MCKOWN
IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF
AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
PROSKAUER ROSE LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN
POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, Michael McKown, being duly sworn, state the following under penalty of perjury:

1.      I am the General Counsel and Senior Vice President of Murray Energy Corporation

("Murray"), located at 46226 National Road, St. Clairsville, Ohio 43950.  Murray provides certain

management services to the Debtors pursuant to a Management Services Agreement.   These

services include legal services.

2.      I submit this declaration in support of the *Debtors' Application for Entry of an*

*Order Authorizing the Retention and Employment of Proskauer Rose LLP as Attorneys for the*

*Debtors and Debtors in Possession Effective Nunc Pro Tunc to the Petition Date* (the

---

[1]  The Debtors in these Chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification
number, if applicable, are: Murray Metallurgical Coal Holdings, LLC (4633); Murray Eagle Mining, LLC (4268);
Murray Alabama Minerals, LLC (4047); Murray Alabama Coal, LLC (3838); Murray Maple Eagle Coal, LLC
(4435); and Murray Oak Grove Coal, LLC (4878).  The Debtors' primary business address is 46226 National Road,
St. Clairsville, OH 43950.

"Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## The Debtors' Selection of Counsel

3.      The Debtors recognize that a comprehensive review process is necessary when selecting and managing chapter 11 counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

4.      To that end, the review process utilized by the Debtors here assessed potential counsel based on their expertise in the relevant legal issues and in similar proceedings.

5.      Ultimately, the Debtors retained Proskauer because of its extensive experience in corporate reorganizations, both out-of-court and under chapter 11 of the Bankruptcy Code.  More specifically, Proskauer is familiar with the Debtors' business operations and many of the potential legal issues that may arise in the context of these chapter 11 cases.  I believe that Proskauer is both well qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## Rate Structure

6.       In my capacity as General Counsel and Senior Vice President of Murray, I am responsible for supervising outside counsel retained by Murray, and its subsidiaries, including the Debtors, in the ordinary course of business.  Proskauer has informed the Debtors that its rates for bankruptcy representations are comparable to the rates Proskauer charges for non-bankruptcy representations.  It is my understanding that Proskauer reviews and adjusts its billing rates annually, and that its billing rates were adjusted in November 2019, consistent with its customary

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

practice.   As discussed below, I am also responsible for reviewing the statements regularly submitted by Proskauer, and can confirm that the rates Proskauer charged the Debtors in the prepetition period are the same as the rates Proskauer will charge the Debtors in the postpetition period.

### Cost Supervision

7.     The Debtors have approved the prospective budget in connection with the proposed debtor in possession financing, recognizing that in the course of a large chapter 11 case like these chapter 11 cases, it is possible that there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtors and Proskauer.  The Debtors further recognize that it is their responsibility to monitor closely the billing practices of their counsel to ensure the fees and expenses paid by the estate remain consistent with the Debtors' expectations and the exigencies of the chapter 11 cases.  The Debtors will continue to review the statements that Proskauer regularly submits and, together with Proskauer, amend any prospective budget and staffing plans periodically as the cases develop.

8.     As they did prepetition, the Debtors will continue to bring discipline, predictability, client involvement, and accountability to the counsel fee and expense reimbursement process. While every chapter 11 case is unique, these budgets will provide guidance on the periods of time involved, the level of the attorneys and professionals who will work on various matters, and projections of average hourly rates for the attorneys and professionals for various matters.

*[Remainder of page intentionally left blank]*

3

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true
and correct to the best of my knowledge and belief.

Dated: February 19, 2020

Respectfully submitted,

Michael McKown
General Counsel and Senior Vice President
Murray Energy Corporation