This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.

**IT IS SO ORDERED.**



John E. Hoffman, Jr.
United States Bankruptcy Judge

**Dated: March 11, 2020**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MURRAY METALLURGICAL COAL HOLDINGS, LLC, *et al.*,[1] | Case No. 20-10390 (JEH) |
| | Judge John E. Hoffman, Jr. |
| Debtors. | (Jointly Administered) |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PROSKAUER ROSE LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE [RELATED TO DOCKET NO. 152]**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors

---

[1] The Debtors in these Chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: Murray Metallurgical Coal Holdings, LLC (4633); Murray Eagle Mining, LLC (4268); Murray Alabama Minerals, LLC (4047); Murray Alabama Coal, LLC (3838); Murray Maple Eagle Coal, LLC (4435); and Murray Oak Grove Coal, LLC (4878). The Debtors' primary business address is 46226 National Road, St. Clairsville, OH 43950.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

1

to employ and retain Proskauer Rose LLP ("Proskauer") as their attorneys effective *nunc pro tunc* to the Petition Date on the terms set forth in the engagement letter (the "Engagement Letter") attached hereto as **Exhibit 1**, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of Ohio (the "Local Rules"), and *General Order 30-3* from the United States Bankruptcy Court for the Southern District of Ohio, dated December 4, 2019; and the Court having reviewed the Application, the Declaration of Timothy Q. Karcher, a partner of Proskauer (the "Karcher Declaration"), and the declaration of Michael McKown, the General Counsel and Senior Vice President of Murray Energy Corporation (the "McKown Declaration); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Office of the United States Trustee (the "US Trustee") having requested certain additional representations from Proskauer including (i) notwithstanding anything to the contrary in the Engagement Letter, Proskauer will bill the Debtors in tenths of an hour, (ii) none of the parties identified on Schedule 2 to the Karcher Declaration represent more than 1% of Proskauer's total annual revenue, (iii) Proskauer has conducted an additional conflict check for the name Andrew R. Vara, and reports that there were no connections found to that name in Proskauer's conflicts database, and (iv) as a supplement to paragraph 29 of the Karcher Declaration, Proskauer will not represent any clients engaged in trading of claims against the Debtors in any transactions involving the Debtors or their affiliates (collectively, the

"Additional Representations"); and the Additional Representations having satisfied the requests of the US Trustee; and the US Trustee having no objection to the Application or the entry of this order; and the Court having found based on the representations made in the Application and in the Karcher Declaration, as well as the Additional Representations recited above, that (a) Proskauer does not hold or represent an interest adverse to the Debtors' estates and (b) Proskauer is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having read the memoranda in support of the relief requested therein; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1. The Application is granted to the extent set forth herein.

2. The Debtors are authorized to retain and employ Proskauer as their attorneys *nunc pro tunc* to the Petition Date in accordance with the terms and conditions set forth in the Application and in the Engagement Letter attached hereto as **Exhibit 1**.

3. Proskauer is authorized to provide the Debtors with the professional services as described in the Application and the Engagement Letter. Specifically, but without limitation, Proskauer will render the following legal services:

    a. advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses

      and properties;

b.   advising and consulting on their conduct during these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.   attending meetings and negotiating with representatives of creditors and other parties in interest;

d.   taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.   preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.   representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.   advising the Debtors in connection with any potential sale of assets;

h.   appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.   advising the Debtors regarding tax matters;

j.   taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.   performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors; and (iii) advising the Debtors on corporate and litigation matters.

4.     Proskauer shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable procedures and orders of the Court. Proskauer also intends to make a reasonable effort to comply with the U.S. Trustee's

requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Revised UST Guidelines"), both in connection with the Application and the interim and final fee applications to be filed by Proskauer in these chapter 11 cases.

5. Notwithstanding anything in the Engagement Letter to the contrary, Proskauer shall apply any remaining amounts of its prepetition advance payment retainers as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Proskauer. Proskauer is authorized without further order of the Court to reserve and apply amounts from the prepetition advance payment retainers that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Proskauer for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices. Notwithstanding anything in the Engagement Letter to the contrary, Proskauer shall hold all retainers in a client-trust account, and any unearned retainers shall be returned to the Debtors at the end of these Chapter 11 Cases.

6. Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to Proskauer's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

7. The U.S. Trustee and the Statutory Committee of Unsecured Creditors ("UCC") reserves the right to object to the appropriateness of any fees and expenses incurred notwithstanding Proskauer's disclosure in the Application, the Karcher Declaration, and the Engagement Letter of its intention to incur costs.

8. Proskauer shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Proskauer to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

9. Proskauer shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court. The U.S. Trustee and the UCC retain all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

10. The Debtors and Proskauer are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

11. Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Bankruptcy Rules are satisfied by the contents of the Application.

12. The Debtors shall serve this Order in accordance with all applicable rules and shall file a certificate of service evidencing compliance with this requirement.

13. To the extent the Application, the Karcher Declaration, the McKown Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

14. Notwithstanding anything to the contrary in the Engagement Letter, Proskauer shall maintain its time records in tenths of an hour.

15. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

SO ORDERED.

SUBMITTED BY:

 /s/ Thomas R. Allen

| | | |
|---|---|---|
| Thomas R. Allen | (0017513) | |
| Richard K. Stovall | (0029978) | |
| James A. Coutinho | (0082430) | |
| Matthew M. Zofchak | (0096279) | |

**Allen Stovall Neuman Fisher & Ashton**
17 South High Street, Suite 1220
Columbus, Ohio 43215
Telephone: (614) 221-8500
Facsimile: (614) 221-5988
Email: allen@asnfa.com
stovall@asnfa.com
coutinho@asnfa.com
zofchak@asnfa.com

*Proposed Counsel to the Debtors and Debtors in Possession*

David M. Hillman (admitted *pro hac vice*)
Timothy Q. Karcher (admitted *pro hac vice*)
Chris Theodoridis (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: dhillman@proskauer.com
tkarcher@proskauer.com
ctheodoridis@proskauer.com

- and -

Charles A. Dale (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, Massachusetts 02110
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
Email: cdale@proskauer.com

*Proposed Counsel to the Debtors and Debtors in Possession*

Copies to Default List.

Document    Page 8 of 15

## **Exhibit 1**

**Engagement Letter**

**Proskauer**  Proskauer Rose LLP  Eleven Times Square  New York, NY 10036-8299

David M. Hillman
Member of the Firm
d 212.969.3470
f 212.969.2900
DHillman@proskauer.com
www.proskauer.com

December 11, 2019

**BY EMAIL**

Murray Metallurgical Coal Holdings LLC
Murray Eagle Mining LLC
Murray Alabama Minerals, LLC
Murray Maple Eagle Coal, LLC
Murray Alabama Coal, LLC
Murray Oak Grove Coal, LLC

Re:  Engagement Letter

To the Above Named Parties:

We have been asked to represent and advise Murray Metallurgical Coal Holdings LLC, Murray Eagle Mining LLC, Murray Alabama Minerals, LLC, Murray Maple Eagle Coal, LLC, Murray Alabama Coal, LLC, Murray Oak Grove Coal, LLC, (collectively, "Murray Metallurgical" or "you") to assess strategic alternatives together with any other matter that you and we may specifically agree in writing to be subject to such representation (the foregoing matters are collectively referred to in this letter agreement as the "Project"). We are writing to confirm the terms of our engagement regarding such representation. Except as specifically agreed, our representation does not include the representation of any of your other affiliates, nor do we undertake any obligations with respect to any matter not specifically defined as part of the Project.

**Fees, Disbursements and Charges**

Unless you and we otherwise agree in writing, our fees will be billed on a weekly basis. Our statements will set forth the amount of our fees and any associated disbursements and charges, and the basis for their calculation.

Our normal billing practice is to determine fees by multiplying the number of hours spent working on a matter by our billing rates for similar services performed by the firm. The minimum billing increment is ordinarily 1/4 hour. Although I will be the attorney primarily responsible for the Project, I likely will enlist the services of other attorneys and personnel employed by or associated with the firm, whose services will be billed at their respective applicable rates. My current billing rate is $1,495.00 per hour. The rates of our other attorneys

10063/99987-512 CURRENT/112936921v3

## Proskauer》

December 11, 2019
Page 2

and personnel vary, but are comparable to or lower than mine. The firm increases its standard billing rates from time to time. All statements are due and payable upon receipt, but in any event no later than 30 days after the date of the statement. You agree to review our bills promptly when received and promptly advise us of any questions or concerns you may have. Our fees will be due regardless of whether the Project is concluded.

Charges and disbursements will also be billed to you on a weekly basis after they are incurred and recorded by our accounting department. I have attached a schedule listing the bases on which we will bill you for certain charges and disbursements. From time to time in the course of this engagement, it may become necessary to incur large expenses on your behalf, for example, for consultants, local or associated counsel, experts, filing fees, printing and outside reproduction, deposition or trial transcripts, and graphics and trial exhibits. To assure that these services are obtained expeditiously and to avoid the necessity of advancing large amounts on your account, we will arrange for payment of vendors for such expenses by one of the following methods, after consulting with you: (1) direct billing to you by the vendor for the services rendered by the vendor; (2) payment by us of invoices for services rendered on your behalf, with a request for prompt reimbursement upon presentation to you of a paid invoice; or (3) the establishment of a deposit with us, in advance, to provide funds to pay anticipated expenses of those types.

We may from time to time, either at your request or at our own initiative, provide you with an estimate of fees or costs that we reasonably anticipate will be incurred in connection with the Project. It is understood that such estimates, which are predicated on a variety of assumptions, are subject to unforeseen circumstances and are by their nature inexact. No written or oral estimate, either before, at the time of, or following the execution of this engagement letter, shall be construed to be a fee cap or fixed fee.

### Retainer

In connection with our services, we have enclosed an invoice for an initial retainer of $ $100,000.00 (the "Retainer"), which Murray Metallurgical agrees to replenish on a periodic basis to the extent necessary to ensure that the Retainer will at all times be not less than $100,000.00. The Retainer as earned by the Firm upon receipt, may be held in the Firm's general cash account, will not be held in a separate account on your behalf, and Murray Metallurgical will not have an interest in the Retainer. The Retainer is intended to be a prepayment, in which we have a security interest, for services actually rendered by us. We reserve the right to ask for an increase in the size of the initial retainer during the course of our engagement. We will refund any unapplied amount of the Retainer upon completion of the Project.

### Conflicts of Interest

You acknowledge that we are a large general service firm representing numerous clients, nationally and internationally, over a wide variety of industries and businesses and in a wide variety of matters. In light of the foregoing, the possibility exists that the interests of some of our

2

## Proskauer»

December 11, 2019
Page 3

other clients, current or prospective, may diverge from or become adverse to your interests. We want to be fair to you as well as to our other clients. Thus, we do not want our work on the Project to foreclose us from representing or advising other clients in matters that are adverse to your interests but are not directly related to the Project, including in litigation or other adversarial proceedings, and do not require the disclosure of your confidential information. After having considered this possibility, you have concluded that the benefits of our representation in the Project outweigh any disadvantages or risks of waiving future conflicts, and you agree to, and do, waive any conflict of interest that may be deemed to arise as the result of any such other representation and agree not to seek to disqualify or otherwise prevent our firm from representing other clients in such matters by reason of our work on, or representation of you in connection with, the Project, or based on our possession of your confidential information. In the event we become involved in an adverse representation, as permitted by this letter or otherwise with your consent, you hereby waive any claim that, in connection with the Project, we will have gained access to information of a kind or nature that would preclude such representation.

Your acceptance of the foregoing conditions of our agreement to represent you in connection with the Project has been made with full and complete awareness of the fact that we and present and future clients of our firm are and will be relying upon our ability to act for them in accordance with the terms of this letter. You hereby acknowledge that in accepting these conditions and executing this letter, you have not relied on any advice provided by this firm and are able to seek independent legal advice.

### Terminating Representation

You have the right to discharge us as counsel at any time prior to the conclusion of the Project, but such discharge shall not affect our right to be paid all of our previously incurred but unpaid fees, and all of our previously incurred but unpaid charges and disbursements, in accordance with this letter agreement. You also agree that we have the right, if in our sole judgment we believe such action to be consistent with our professional obligations, to resign as your counsel, and that such resignation shall not affect our right to be paid all our previously incurred but unpaid fees, and all our previously incurred but unpaid charges and disbursements, in accordance with this letter agreement. Without limiting in any way our general legal and ethical rights to withdraw from representing you, it is agreed that we may withdraw if any of our invoices for legal fees, disbursements and/or charges incurred in connection with our representation of you remain outstanding for a period of 45 days. Subject to the provisions of this letter agreement, you agree not to raise any objection to any such resignation or to our continued representation of our other clients. If we elect, consistent with our ethical obligations, to resign as counsel, you agree to cooperate and facilitate such resignation by retaining substitute counsel or otherwise.

### Conclusion of Representation and Disposition of Records

Once our work on the Project is completed, our representation of you will be concluded. At that point, or upon your earlier discharge of us or our earlier resignation as counsel, we may

# Proskauer»

December 11, 2019
Page 4

inquire whether you would prefer that we send you our client files, destroy the client files, or place them in storage at your expense. Should you fail to state a preference, we will send you the files. In the event that you decline delivery of the files, we would have the option of destroying them or storing them at your expense. Notwithstanding the foregoing, and unless you instruct us otherwise, we will return and/or preserve any original documents we know or believe you will need to retain to enforce your rights or to bring or defend claims.

Periodically, we distribute materials that include listings of representative clients and, following completion of a Project, we may refer in those materials to our representation of you in connection with the Project, and you agree that we may do so. These references will not, of course, disclose any of your confidential information.

While we may contact you from time to time thereafter with information concerning legal developments that may relate to the Project, we cannot and do not undertake any responsibility to monitor or advise you with respect to any such developments, including any changes in law.

### Arbitration Provisions

You and we agree that any dispute that may arise regarding the provision of legal services by the firm to you, including, without limitation, claims of malpractice or breach of fiduciary duty, or for nonpayment of fees, charges, or disbursements, shall be referred to and finally resolved by binding arbitration in New York, New York, [or location of relevant office] administered by the American Arbitration Association in accordance with its rules and procedures by a neutral arbitrator appointed in accordance therewith. The prevailing party will be entitled to all reasonable attorneys' fees and costs incurred in such arbitration. Judgment thereon can be entered in any court of competent jurisdiction. In the event that a dispute arises between us relating to our fees, you may also have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts of New York State, a copy of which will be provided to you upon request.

### Choice of Law

This agreement shall be governed by and interpreted in accordance with the laws of the State of New York, without regard to such state's conflicts of laws principles.

### Conclusion

If you have any questions about anything in this letter or need more information about any aspect of our engagement, please call me at any time. If you agree that the foregoing accurately reflects our understanding, please sign and return the enclosed copy of this letter. We appreciate your entrusting us with this matter and look forward to working with you.

**Proskauer»**

December 11, 2019
Page 5

Very truly yours,

*[signature]*

David M. Hillman

Agreed to and Accepted on this
_____ day of December, 2019

By: _____
Name: Robert D. Moore
Title: Vice President
Murray Metallurgical Coal Holdings, LLC

By: _____
Name: Robert D. Moore
Title: Vice President
Murray Eagle Mining, LLC

By: _____
Name: Paul B. Piccolini
Title: President
Murray Alabama Coal, LLC

By: _____
Name: Robert D. Moore
Title: Vice President
Murray Maple Eagle Coal, LLC

By: _____
Name: Robert D. Moore
Title: Vice President
Murray Alabama Minerals, LLC

By: _____
Name: Paul B. Piccolini
Title: Vice President
Murray Oak Grove Coal, LLC

5

# PROSKAUER ROSE LLP

## SCHEDULE OF CHARGES AND DISBURSEMENTS

Effective January 1, 2019

Attached is a list of disbursements regularly made by Proskauer lawyers on behalf of clients and charges for services which our firm may provide in the course of a legal matter. Included is an explanation of the basis on which clients are billed for a disbursement or charge.

This schedule is subject to change from time to time.

If you have any questions, please feel free to direct them to Leigh Anne Whyte, Chief Financial Officer (212.969.5150), or to discuss them with the lawyer at our firm with whom you deal concerning billing issues.

## **DISBURSEMENTS**

The actual amount to be paid by Proskauer to a third party vendor for the following services will be billed to the client

Client hand deliveries by outside vendors

Copying and document retrieval fees charged by government agencies or service companies

Expert Witness Fees

Fees of registered agents and corporate service companies

Filing Fees of Courts and Administrative Agencies

Food service during conferences and other meetings on behalf of a client

Messenger Service

Outside Consultants, including accountants, other law firms, investigators and translators

Postage

Printing or Outside Reproduction charges including document binding

Transcripts, Court Reporters

Travel on client business, including transportation, lodging and meals provided by third parties

Velobinding

## CHARGES

The charges described below do not necessarily reflect the precise amount we pay to outside vendors, but are intended to compensate our firm for all aspects of the service provided. Thus, these charges may include as allocation of overhead expenses or other expenses we incur that are directly associated with the provision of the service in question.

| Type | How Client Is Billed |
|---|---|
| Automobile travel on client business | 58 cents per mile |
| Computer aided research (Lexis, Westlaw, Nexis, etc.) | Standard rates set by vendor |
| eDiscovery Hosting Services | $15 per gigabyte per month |
| Fax - incoming only | No charge |
| Fax - outgoing only | $1.00 per page |
| Overnight deliveries (UPS, etc.) | Provider standard rate tariff |
| Proofreading services | $55/hour |
| Reproduction – black & white | $.15 per page |
| Reproduction – color | $.30 per page |
| Secretarial overtime | $65/hour |
| Telephone - local | No charge |
| Telephone - long distance | Equal to or less than the AT&T Measured Telecommunications Services Tariff |
| Word Processing services | $65/hour |

ii